William SPIER, Max Weil, Bernard Hochstein, Howard Schraub, Estate of C. Ray Greene and Thomas H. Greene, Plaintiffs,

v.

Leslie N. ERBER, Pericles Constantinou, Rocco Velocci, Orval E. Gould, Morton S. Robson, Jack Casagrande, G.G.C., Inc. d/b/a The Enterprise Company, a California Corporation, Waste Technology Corp., a Delaware Corporation, IWS of Marion County, Inc., a Florida Corporation, Stuart Becker & Co., P.C., a New York Professional Corporation, Ruffa and Hanover, P.C., a New York Professional Corporation, John Doe and Richard Roe, Inc., Defendants.

No. 89 Civ. 1657 (PKL).

United States District Court,
S.D. New York.

March 18, 1991.

Robson & Miller, New York City (Kenneth N. Miller, of counsel), for defendant Waste Technology.

Kalnick, Jackson, Klee & Green, New York City (Stuart A. Jackson, of counsel), for defendants G.G.C., Inc. and Orval E. Gould.

## ORDER AND OPINION

LEISURE, District Judge:

This is an action for damages arising out of an alleged fraudulent scheme to sell interests in a limited partnership. Plaintiffs allege that defendants have violated section 29(b) and section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78cc(b) and 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5. Plaintiffs also seek recovery under the doctrines of common law fraud, accountant malpractice and attorney malpractice.

Defendant Waste Technology Corporation ("Waste Tech")[1] has answered the complaint and filed cross-claims against defendants G.G.C., Inc., d/b/a The Enterprise Company ("Enterprise")[2] and its president Orval E. Gould ("Gould")[3] (collectively, the "Enterprise Defendants"), for breach of

1. Waste Tech is a Delaware corporation with its principal place of business in New York.

2. Enterprise is a California corporation with its principal place of business also located in California.

3. Gould is a citizen of California.

4. On May 24, 1990, this Court granted the Enterprise Defendants' motion to dismiss the primary complaint in this action, pursuant to Fed.R. Civ.P. 12(b)(1), 12(b)(6) and 9(b). *Spier v. Erber*, 1990 WL 71502, 1990 U.S.Dist. LEXIS 6286

contract and for fraud. The Enterprise Defendants have now filed a motion to dismiss all of Waste Tech's cross-claims pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(3), and, in the alternative, to dismiss Waste Tech's fraud cross-claim pursuant to Fed.R.Civ.P. 9(b).

## BACKGROUND [4]

In December 1984, Ocala Waste Disposal Associates ("Ocala Associates") purchased a pyrolytic waste disposal system (the "Equipment") from Enterprise that was to be delivered and installed by Enterprise at a landfill site in Marion County, Florida (the "Site"). Affidavit of Leslie N. Erber, sworn to on January 3, 1991 ("Erber Affidavit" or "Erber Aff."), ¶ 3.[5] The price for the Equipment was $3,500,000, part of which was paid in cash, and the balance of which was paid by the delivery of a non-recourse promissory note payable to Enterprise (the "Ocala Note"). Answer ¶¶ 76, 77.[6] In addition, Ocala Associates granted Enterprise a lien on the Equipment, pursuant to a written security agreement (the "Security Agreement"). Answer ¶ 78.

In or about February 1986, Waste Tech's bank, Manufacturers and Traders Trust Company ("M & T"), agreed to lend Enterprise $1,900,000 (the "Loan"), provided that Waste Tech would guarantee the loan. The Loan was evidenced by a non-recourse promissory note (the "Enterprise Note") in the amount of $1,900,000, dated February 1, 1986, Affidavit of Stuart A. Jackson, Esq., sworn to on October 11, 1990, ("Jackson Aff."), Exhibit G, and a written loan agreement between Enterprise and M & T, also dated February 1, 1986 (the "Loan

(S.D.N.Y. May 24, 1990). Familiarity with the facts of this case, as outlined in the Court's prior opinion, is assumed. Only those facts pertinent to the instant motion will be discussed herein.

5. Leslie N. Erber ("Erber") was at all relevant times the president of Waste Tech.

6. The parties disagree as to the amount of the Ocala Note. The Enterprise Defendants claim the Ocala Note is in the amount of $2,214,000, whereas Waste Tech claims it is for $2,264,000. For purposes of the instant motion, the precise amount of the Ocala Note is immaterial.

Agreement"). Jackson Aff., Exhibit G. Enterprise also executed a written assignment (the "Collateral Assignment"), dated March 19, 1986, assigning to M & T the Ocala Note, as well as Enterprise's rights and interests under the Security Agreement, as security for the performance of its obligations under the Enterprise Note and the Loan Agreement. Jackson Aff., Exhibit H.

On or about February 17, 1987, Waste Tech entered into a general guaranty agreement with M & T (the "Guaranty"), whereby it guaranteed Enterprise's obligations under the Loan Agreement and Enterprise Note. Jackson Aff., Exhibit I. Waste Tech alleges that it had agreed to guarantee Enterprise's obligations—without which M & T would not have made the Loan—in exchange for Enterprise's promise to install the Equipment at the Site and complete the pyrolytic system by the end of June 1986. Erber Aff., ¶ 10.[7] Waste Tech considered the installation of the Equipment to be a critical factor in its decision to enter into the Guaranty, because the lien on the Equipment had been transferred to M & T—along with Enterprise's other rights under the Security Agreement—pursuant to the Collateral Assignment, and if the Equipment were properly installed and operational it would have a far higher value than it otherwise would. Erber Aff., ¶ 10.

Thereafter, Enterprise apparently defaulted on its obligations to M & T under the Enterprise Note and the Loan Agreement. Pursuant to the Guaranty, Waste Tech was compelled to pay M & T $1,900,-000 as the principal sum of the Enterprise Note, plus a total of $136,880.88 in interest thereon. Enterprise also apparently did not install the Equipment at the Site, and did not complete the pyrolytic system. Answer ¶ 103. After this action was commenced, Waste Tech filed an answer, including four cross-claims. The first, second and fourth cross-claims, asserted solely against Enterprise, seek damages for En-

terprise's alleged breach of the Enterprise Note, the Loan Agreement and the Collateral Assignment, and for Enterprise's alleged breach of its agreement to install the Equipment at the Site. The third cross-claim, asserted against the Enterprise Defendants, alleges that the Enterprise Defendants fraudulently induced Waste Tech to enter into the Guaranty with M & T by misrepresenting that Enterprise would manufacture and install the Equipment.

## DISCUSSION

### 1) Personal Jurisdiction

■ In this diversity action, the existence of personal jurisdiction

> is determined by reference to the law of the jurisdiction in which the court sits. The burden of establishing jurisdiction over a defendant, by a preponderance of the evidence, is upon the plaintiff. Until an evidentiary hearing is held, however, the plaintiff need make only a prima facie showing that jurisdiction exists, and this remains true notwithstanding a controverting presentation by the moving party. In the absence of an evidentiary hearing on the jurisdictional allegations, or a trial on the merits, all pleadings and affidavits are construed in the light most favorable to plaintiff, and where doubts exist, they are resolved in the plaintiff's favor.

*Hoffritz For Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985) (citations omitted).[8]

With respect to jurisdiction over Enterprise, Waste Tech argues that, having discharged the obligations of Enterprise to M & T pursuant to the Enterprise Note and the Loan Agreement, Waste Tech is subrogated to M & T's rights and remedies under those agreements and under the Collateral Assignment given to secure Enterprise's obligations to M & T. In each of those documents, Enterprise consents to

---

7. The Answer avers that Enterprise agreed that it would install and complete the pyrolytic system by the end of 1985. Answer ¶ 102.

8. No evidentiary hearing has been held by the Court with respect to the issue of personal jurisdiction in this case.

the jurisdiction of this Court.[9] Accordingly, Waste Tech argues, this Court has jurisdiction over Enterprise with respect to Waste Tech's cross-claims. The Court finds this argument persuasive.

█ It is well-established "that parties to a contract may agree in advance to submit to the jurisdiction of a given court," *National Equipment Rental Ltd. v. Szukhent*, 375 U.S. 311, 316, 84 S.Ct. 411, 414, 11 L.Ed.2d 354 (1964), and such an agreement will be enforced unless it would be unjust or unreasonable to do so. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n. 14, 105 S.Ct. 2174, 2182 n. 14, 85 L.Ed.2d 528 (1985).[10] Waste Tech's first and second cross-claims directly involve enforcement of the Enterprise Note, the Loan Agreement and the Collateral Assignment, each of which contains Enterprise's consent to this Court's jurisdiction. Despite Enterprise's argument to the contrary, it is clear that the jurisdictional consent provisions contained in those documents would have been enforceable by M & T against Enterprise.[11] Thus, the issue is solely whether Waste Tech, as M & T's subrogee, can enforce those provisions against Enterprise. The answer is clearly in the affirmative.

Under New York law, "[i]t is the very essence of subrogation that a subrogee stands in the shoes of the subrogor and is entitled to all of the latter's rights, benefits and remedies." *United States Fidelity and Guaranty Co. v. E.W. Smith Co.*, 46 N.Y.2d 498, 504, 414 N.Y.S.2d 672, 674, 387 N.E.2d 604, 605–06 (1979) (applying statute of limitations applicable to New York residents to claim brought by foreign corporation as subrogee of New York partnership); *see also Servidori v. Mahoney*, 129 A.D.2d 944, 515 N.Y.S.2d 328 (3d Dep't 1987) (the rights of a subrogee must be determined with respect to the rights of the subrogor); *Solomon v. Consolidated Resistance Company of America, Inc.*, 97 A.D.2d 791, 468 N.Y.S.2d 532 (2d Dep't 1983). In the instant case, because M & T had the right to enforce the jurisdictional consent provisions, Waste Tech, as M & T's subrogee, has the same right to do so, where, as here, it is seeking to enforce what are now its rights by subrogation under the Enterprise Note, the Loan Agreement and the Collateral Assignment. *Cf. National Union Fire Insurance Company of Pittsburgh v. Fanelli*, 1990 WL 134895, 1990 U.S. Dist. LEXIS 11877 (S.D.N.Y. Sept. 12, 1990) (as-

**9.** Paragraph 3 of the rider to the Enterprise Note provides that

[t]his Note shall be governed by, and construed and enforced in accordance with, the laws of the State of New York. [Enterprise] agrees to service of process by mail, submits to the jurisdiction of the federal or state courts in New York, waives any claim that the forum is inconvenient and waives trial by jury.

Paragraph 12 of the Loan Agreement provides in pertinent part that

[Enterprise] agrees to service of process by mail, submits to the jurisdiction of the federal or states courts in New York, waives any claim that the forum is inconvenient and waives trial by jury.

Paragraph 7(b) of the Collateral Assignment provides in pertinent part that

[Enterprise] hereby agrees that any suit, action or proceeding with respect to this Agreement, the [Enterprise] Note or the Loan Agreement, any amendments or any replacements hereof and thereof, and any transactions relating hereto and thereto may be brought in the state courts of, or the federal courts in, the State of New York and [Enterprise] hereby irrevocably consents and sub-

mits to the jurisdiction of such courts for the purpose of any such suit, action or proceeding.... [Enterprise] hereby waives, and agrees not to assert against [M & T] (or any assignee thereof), by way of motion, as a defense, or otherwise, in any such suit, action or proceeding, (a) any claim that it is not personally subject to the jurisdiction of the above-named courts ... and (b) to the extent permitted by applicable law, any claim that such suit, action or proceeding is brought in any inconvenient forum or that the venue of such suit, action or proceeding is improper.

**10.** Enterprise has not argued that it would be "unjust or unreasonable" to enforce the jurisdictional consent provisions at issue in this case.

**11.** Enterprise argues that because the Enterprise Note is non-recourse in nature, M & T would not have been able to bring an action against Enterprise on the Enterprise Note in a New York court. This is a *non sequitur.* The fact that the Enterprise Note is non-recourse merely limits the assets against which the noteholder can seek to recover in enforcing the Enterprise Note, and has no bearing on the explicit jurisdictional consent provisions.

signee of note can enforce jurisdictional consent clause contained therein); *National Union Fire Insurance Company of Pittsburgh v. Pearson*, 1989 WL 86032, 1989 U.S. Dist. LEXIS 8786 (S.D.N.Y. July 27, 1989) (subrogee of noteholder is bound by forum selection clause contained in note).

Enterprise asserts in its brief, without any evidentiary support, that the jurisdictional clause "was consented to because of the parties [*sic*] special relationship," and that "it was never contemplated by the parties that a consent to jurisdiction under this limited set of circumstances was transferable to a third party." Reply Memorandum of Law of Defendants, Orval E. Gould and G.G.C., Inc. in Support of Their Motion to Dismiss the Cross–Claims of Defendant Waste Technology Corporation at 10. However, the Collateral Assignment explicitly provides that Enterprise will not assert against Waste Tech *"or any assignee thereof"* any claim that it is not personally subject to the jurisdiction of this Court. Jackson Aff., Exhibit H, ¶ 7(b). Obviously Enterprise did contemplate that the jurisdictional clause would be "transferable" to third parties. Moreover, the central principle of subrogation provides for such transfer of rights and remedies. *See United States Fidelity, supra.* Therefore, this Court has jurisdiction over Enterprise.

■ As to this Court's jurisdiction over Gould, Waste Tech has sufficiently made a *prima facie* showing that Gould committed a tortious act within New York so as to bring him within the reach of the New York long-arm statute. Section 302(a)(2) of the New York Civil Practice Law and Rules provides that

> [a]s to a cause of action arising from any of the acts enumerated in this section, a court may exercise jurisdiction over any non-domiciliary ... who in person or through an agent ... commits a tortious act within the state....

CPLR § 302(a)(2). The allegations in Waste Tech's answer and the evidence presented in the Erber Affidavit, construed in the light most favorable to Waste Tech, *Hoffritz, supra,* 763 F.2d at 57, make a satisfactory showing for jurisdictional purposes that Gould came to New York in November 1985 and falsely represented to Erber that Enterprise would install the Equipment and complete the pyrolytic system, knowing such representations to be false, so as fraudulently to induce Waste Tech to enter into the Guaranty. *See* Answer ¶¶ 96–100; Erber Aff., ¶¶ 7–10; *see also Hargrave v. Oki Nursery, Inc.,* 636 F.2d 897, 899 (2d Cir.1980) (enumerating the elements of an action in tort for fraudulent representation).

■ Gould argues, however, that Waste Tech's third cross-claim is, in fact, a claim for breach of contract, and thus § 302(a)(2) is inapplicable. However, the Second Circuit has clearly held that under New York law

> it does not follow that because acts constitute a breach of contract they cannot also give rise to liability in tort. Where the conduct alleged breaches a legal duty which exists 'independent of contractual relations between the parties' a plaintiff may sue in tort. If the only interest at stake is holding the defendant to a promise, the courts have said that the plaintiff may not transmogrify the contract claim into one for tort. But if in addition there is an interest in protecting the plaintiff from other kinds of harm, the plaintiff may recover in tort whether or not he has a valid claim for breach of contract.

*Hargrave, supra,* 636 F.2d at 899 (quoting *Channel Master Corp. v. Aluminum Limited Sales, Inc.,* 4 N.Y.2d 403, 408, 176 N.Y.S.2d 259, 263, 151 N.E.2d 833, 836 (1958) and citing cases); *see also Cavalier Label Company, Inc. v. Polytam, Ltd.,* 687 F.Supp. 872, 878 (S.D.N.Y.1988) (false representations by defendant that it would install pressing machinery and obtain financing for fabric, relied upon by plaintiff to its injury, states tort claim within meaning of CPLR § 302); *Cantor v. Life Alert, Inc.,* 655 F.Supp. 673, 678 (S.D.N.Y.1987) ("Simply because a set of acts may constitute breach of contract does not mean that they cannot also give rise to liability in tort and provide the predicate for personal jurisdiction under [CPLR § 302]."). In the

present case, Waste Tech seeks not merely to enforce the Enterprise Defendants' contractual obligations to it, but also to recover for the actual damage it avers it has suffered as a result of its reliance on Gould's alleged fraudulent misrepresentations. The third cross-claim sounds in tort, and could be brought regardless of whether or not Waste Tech could recover for breach of contract. Thus, this Court has jurisdiction over Gould pursuant to CPLR § 302(a)(2).

### 2) Venue

■ The Enterprise Defendants have also moved, pursuant to Fed.R.Civ.P. 12(b)(3) and 28 U.S.C. § 1391(a), for dismissal of Waste Tech's cross-claims due to improper venue, or, in the alternative, for transfer to a federal district in Florida or California, pursuant to 28 U.S.C. § 1406(a).

In this action founded only on diversity of citizenship, venue is proper "in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose." 28 U.S.C. § 1391(a).[12] Here, the claims must be said to have arisen in the Southern District of New York. The agreements at issue were negotiated in this District, Waste Tech and M & T are both located in this District, the Enterprise Defendants' alleged misrepresentations were made in this District, and the injuries to Waste Tech occurred in this District. Waste Tech's claims surely did not arise in California, which is simply the residence of the Enterprise Defendants, nor does the mere fact that the Equipment was to be installed in a landfill in Florida lead to a conclusion that the claims arose there. Rather, in determining where Waste Tech's claims arose for venue purposes, this Court must "look to the district where the 'weight of the contacts' or the 'events having operative significance' " for Waste Tech's claims oc-

curred. *Kupcho v. Steele,* 651 F.Supp. 797, 801 (S.D.N.Y.1986) (citing cases); *see also* C. Wright, A. Miller & E. Cooper, 15 *Federal Practice and Procedure* § 3806, at 61 (1986) (courts should look to the "weight of the contacts between a claim and a particular district"). That district is the Southern District of New York. Moreover, Enterprise explicitly waived any claim that venue in this District is improper. *See* Collateral Assignment ¶ 7(b), quoted *supra* at note 9. As discussed above, that waiver is enforceable by Waste Tech, and bolsters the Court's finding that venue is properly found in this District. *See* 15 *Federal Practice and Procedure* § 3803.1, at 17–27 and 1990 supp. at 2–5 (contractual provisions modifying venue are enforceable). Accordingly, the Enterprise Defendants' motion to dismiss for improper venue is denied.[13]

### 3) Particularity of Fraud Pleading

■ Finally, the Enterprise Defendants move to dismiss Waste Tech's third cross-claim for failure to plead fraud with the particularity required by Fed.R.Civ.P. 9(b). Rule 9(b) states:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

As in a motion to dismiss a claim pursuant to Fed.R.Civ.P. 12(b)(6), the plaintiff's allegations must be taken as true, *see Luce v. Edelstein,* 802 F.2d 49, 52 (2d Cir.1986), and the Court must limit its consideration to those facts alleged on the face of the pleading. *See Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir.1989); *Raffaele v. Designers Break, Inc.,* 750 F.Supp. 611, 612 (S.D.N.Y. 1990).[14]

---

**12.** Section 1391(a) of title 28 was amended in December 1990. The amended language provides for venue in the judicial district where, *inter alia,* "the defendants are subject to personal jurisdiction at the time the present action is commenced." Thus, under the present venue statute, venue would be proper in this district.

**13.** Given the Court's holding that venue is proper in this district under 28 U.S.C. § 1391(a), the

Court need not consider the Enterprise Defendants' motion to transfer under 28 U.S.C. § 1406(a).

**14.** In contrast, on a motion to dismiss for lack of personal jurisdiction, the Court is free to consider materials beyond the face of the complaint.

The pleading's fraud allegations must be specific enough to allow the defendant "a reasonable opportunity to answer the complaint" and must give "adequate information" to allow the defendant to frame a response. *Ross v. A.H. Robins, Co.*, 607 F.2d 545, 557–58 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). Rule 9(b) is designed to provide the defendant fair notice of the plaintiff's claim so as to enable the defendant to prepare a suitable defense, to protect the defendant's reputation from harm, and to reduce the number of strike suits. *See Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir.1990); *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987). Thus, "fraud allegations ought to specify the time, place, speaker, and content of the alleged misrepresentations. Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio, supra*, 822 F.2d at 1247; *see also Luce, supra*, 802 F.2d at 54.

Furthermore, "[a]lthough scienter need not be alleged with great specificity, plaintiffs are still required to plead the factual basis which gives rise to a 'strong inference' of fraudulent intent." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir.1990) (quoting *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988)). "A common method for establishing a strong inference of scienter is to allege facts showing a motive for committing fraud and a clear opportunity for doing so." *Beck, supra*, 820 F.2d at 50.

Waste Tech's third cross-claim fails to meet Rule 9(b)'s requirement of particularity. The averment that "Waste Tech was induced to guaranty the obligations of Enterprise under the [Enterprise] Note and Loan Agreement to repay the Loan as a result of numerous representations made by Enterprise and [Gould]," Answer ¶ 96, does not specify the time, place, speaker and content of the alleged misrepresentations, and fails to "inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio, supra*, 822 F.2d at 1247. These defects in pleading cannot stand uncorrected.

The Court finds, however, that Waste Tech has adequately pled scienter, alleging that the Enterprise Defendants "knew that [their] representations were false, and intentionally made such false representations in order to induce Waste Tech to guaranty [Enterprise's] obligations to M & T, thereby enabling Enterprise to obtain the Loan on a non-recourse basis." Answer ¶ 98. These allegations of motive and opportunity create the "strong inference" of scienter necessary to survive the Enterprise Defendants' Rule 9(b) motion. *See Beck, supra*, 820 F.2d at 50; *Goldman v. Belden*, 754 F.2d 1059, 1070 (2d Cir.1985). Likewise, to the extent it is required to do so, Waste Tech has sufficiently averred " 'what was obtained or given up as a consequence of the fraud.' " *Klein v. Computer Devices, Inc.*, 591 F.Supp. 270, 279 (S.D.N.Y.1984) (quoting 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 9.03, at 9–20 through 2–24 (1984)).

Accordingly, the Enterprise Defendants' motion to dismiss Waste Tech's third cross-claim, pursuant to Rule 9(b), is granted. Leave to replead is granted.[15]

## CONCLUSION

The Enterprise Defendants' motion to dismiss Waste Tech's cross-claims, pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(3), is denied. The Enterprise Defendants' mo-

---

**15.** The Second Circuit has employed Fed.R. Civ.P. 15(a) liberally to allow for repleading following dismissal on a Rule 9(b) motion. *See Ronzani v. Sanofi, S.A.*, 899 F.2d 195, 198 (2d Cir.1990). However, the Court notes that it has become an all too common practice for litigants granted leave to replead to make only minor changes in the original pleading based on an overly restrictive reading of the dismissing court's order, prompting a second motion to dismiss. An amended complaint which fails to replead with sufficient particularity after a finding of lack of such particularity may well be regarded by the Court as a frivolous filing in violation of Fed.R.Civ.P. 11. Conversely, a renewed Rule 9(b) motion after an adequate and thorough repleading may also be viewed as frivolous.

tion to dismiss Waste Tech's third cross-claim, pursuant to Fed.R.Civ.P. 9(b), is granted. Leave to replead is granted.

SO ORDERED.