OMAHA INDEMNITY COMPANY as subrogee of San Mar Associates, Inc. and Marvin Singer, Plaintiff,

and

San Mar Associates, Inc. and Marvin Singer, Intervenors-Plaintiffs,

v.

JOHNSON & TOWERS, INC. and General Motors Corporation, Defendants.

No. CV 83–0588.

United States District Court, E.D. New York.

Dec. 7, 1984.

---

Rassner, Rassner & Olman by Donald Olman, New York City, for plaintiff.

Deegan, Scibilia & Reardon by Marian C. Rice, Mineola, N.Y., for defendant Johnson & Towers.

Williamson & Williamson, P.C., New York City, for defendant General Motors Corp.

Leiby & Welsh by Kenneth L. Leiby, Jr., New York City, for intervenors-plaintiffs Marvin Singer & San Mar Associates.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff Omaha Indemnity Company (Omaha Indemnity) brings this suit as subrogee of San Mar Associates, Inc. (San Mar) and its president Marvin Singer after paying $27,580.86 for engine damages and breakdown under an all risk policy for marine insurance on the San Mar's yacht the *Sandie Lee III.* Omaha Indemnity sues Johnson & Towers, Inc. (Johnson & Towers), the preparer and installer of the damaged yacht engines, and General Motors Corporation (GM), the builder of the engines. San Mar and Mr. Singer intervened after commencement of the action.

### I.

In 1975 San Mar purchased the *Sandie Lee III* from its first owner. The vessel is a forty-seven foot 1972 Concorde pleasure motor yacht used to entertain San Mar clients. The yacht was powered by standard twin 6–71 diesel engines. Mr. Singer soon found the speed and power too low and complained to Johnson & Towers. On February 8, 1977 Johnson & Towers agreed to rebuild the yacht's engines, converting them to 6–71TI units. Nevertheless, Mr. Singer and defendants agreed not to replace the six-inch exhaust system. The work included a 500 hour warranty on the rebuilt engines. A post-conversion start-up inspection was performed in June 1977 and it was immediately apparent that the existing exhaust system was inadequate for the higher powered engines and was causing backpressure. Johnson & Towers refused to modify the exhaust system and in February 1978 Mr. Singer instituted suit against Johnson & Towers in New York Supreme Court. On May 19, 1978 Mr. Singer and Johnson & Towers entered into a Stipulation of Settlement and a General Release wherein defendant agreed to install an eight-inch exhaust system and pay Mr. Singer $2,367.00. In addition, the suit was discontinued with prejudice and all warranties on the engine ended on June 28, 1978. The discontinuance was contained in the Release, which also precluded any future legal action against Johnson & Towers.

By January 1979 the new exhaust system was installed. In the summer of 1980 the starboard engine failed and both engines were extensively repaired. In 1981 Omaha Indemnity paid $27,580.56 to San Mar for the engine damage. In February 1983 Omaha Indemnity commenced this action.

Plaintiff, as subrogee of San Mar, alleges that the engines were damaged and destroyed because Johnson & Towers used substandard internal parts in the engine modification that could not withstand the higher pressure and temperature. Omaha Indemnity sues for negligence, breach of implied warranty, breach of express warranty, products liability, and fraud. In October 1983 Magistrate Caden granted San Mar's and Mr. Singer's motion to intervene and they seek damages for breach of contract, breach of warranty, and fraud, all based on the engine conversion agreement

of February 1977. Johnson & Towers now moves for dismissal of both complaints under Rule 12(b)(6), or summary judgment under Rule 56(b), Fed.R.Civ.P. Alternatively defendant asks that the intervenors be made third-party defendants.

Johnson & Towers offers two bases for dismissal or summary judgment. First, the defendant asserts that the Stipulation of Settlement and its accompanying General Release of May 19, 1978 extinguish all claims Mr. Singer and San Mar and its subrogees have against Johnson & Towers arising out of the rebuilt engines. Second, defendant argues that the suit is time-barred by the statute of limitations or laches. Plaintiff and intervenors contend that the May 19th Stipulation did not release Johnson & Towers from any warranties or claims and at the least gives rise to questions of fact that make it an inappropriate subject for summary judgment. They also argue that the action is not time-barred.

## II.

It is clear that Omaha Indemnity as subrogee of Mr. Singer and San Mar is bound by the May 19th Stipulation of Settlement and General Release. A subrogee generally must take the subrogor's rights and remedies "as they are, along with their burdens, and subject to any defenses which may be available either against" the subrogee or subrogor. 23 N.Y.Jur.2d, Contribution, Indemnity, and Subrogation § 40 at 63. Here, defendant has interposed the sound defense of the Stipulation and Release and so long as the original parties are bound by it, so is the subrogee, Omaha Indemnity.

The clause of the May 19th Stipulation concerning Johnson & Towers' warranties reads as follows:

6. The parties mutually agree that the written warranty made or delivered to defendant to plaintiff in respect of the engines, transmissions and/or their component parts, whether mechanical or electrical, will expire and be of no further force or effect on June 28, 1978 and that aside from the same, there are no other warranties or contractual committments on the part of the defendant to plaintiff, whether oral or written, express or implied, except for defendant's obligations contained in this stipulation.

Plaintiff and intervenors contend that Paragraph 6 does not vitiate the 500 hour warranty first given for the rebuilt engine. They assert that the language is not explicit and requires the Court to look behind the letter of the Stipulation for the purpose and intent of the parties in entering into it. The meaning and effect of the Stipulation, they argue, requires testimony and findings of fact and is not an appropriate subject for summary judgment.

It is axiomatic that where the language of an agreement is explicit and unambiguous the courts must give it its plain meaning. Paragraph 6 of the May 19th Stipulation is explicit and this Court declines to read in ambiguities or otherwise alter its plain meaning. The Stipulation was the product of negotiation and bargaining and was entered into with the advice of counsel. Consequently, the owner of the yacht and the subrogee are held to the Stipulation.

Paragraph 6 clearly states that all warranties on the yacht's engines and component parts expire on June 28, 1978. It then makes the intent and effect of the warranty expiration pelucidly certain by declaring that there are no other warranties or contractual commitments between the parties aside from those that expire June 28th and those contained in other paragraphs of the May 19th Stipulation. There are no other warranties in the Stipulation. The language of Paragraph 6 could not be more explicit: all warranties are ended and all contractual obligations outside the Stipulation are terminated. The agreement must be given its full and plain effect as to both the intervenor and his subrogee. Accordingly, the plaintiff's and intervenors' claims based on breach of express and implied warranty and breach of contract are barred.

### III.

In addition to the Stipulation of Settlement of May 19, 1984, Marvin Singer signed a General Release in consideration for which Johnson & Towers paid $2,327.00 and agreed to do the work outlined in the Stipulation. The May 19th Release is on a standard printed form used in the New York state courts. It has blanks for parties' names and sums of money and these have been filled in by typewriter. It provides that Marvin Singer releases Johnson & Towers (the releasee) and

RELEASEE'S heirs, executors, administrators, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which against the RELEASEE, the RELEASOR, RELEASOR'S heirs, executors, administrators, successors and assigns ever had, now have or hereafter can, shall or may, have, for upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this RELEASE, excepting only those rights as shall survive the execution of this general release as specifically contained in a stipulation attached hereto and incorporated herein by reference.

Most of this language is stock language pre-printed on the form. The underlined portion, however, was added by typewriter.

■ Again, it is axiomatic that the courts may not go behind an agreement where its meaning is plain on its face. It is arguable that pre-printed forms do not reflect the full intent and purpose of the parties. Nevertheless, in this instance the Release was part of a negotiated settlement and was modified by the parties to reflect their agreement. It cannot be contended that the parties would modify the boilerplate language of the Release where needed in one respect and not in all respects. Where both parties were represented by counsel, bargained for the terms of settlement and release, and evidently could and did modify language to reflect the true terms of the agreement, they will be held to the plain meaning of their agreement. In this instance intervenor Singer released Johnson & Towers from all claims he had with respect to the *Sandie Lee III's* engines and component parts. It is clear from a reading of the Stipulation of Settlement together with the General Release that in exchange for the new exhaust system and the $2,327.00 Johnson & Towers sought to place all further risk for the engines' performance on the owner. This the owner accepted.

■ Nevertheless, even where the meaning of the Release is plain on its face, it can be attacked for substantive flaws in its execution. A release settling litigation is contractual in nature and is interpreted according to precepts and principles of contract law. *E.g., Mt. Read Terminal, Inc. v. LeChase Construction Corp.*, 58 A.D.2d 1034, 396 N.Y.S.2d 959 (4th Dept.1977). To set it aside a party must establish fraud in the inducement, illegality, duress, or mutual mistake. 1B Warren's Negligence § 2.03 at 737 (Matthew Bender & Co.1976). No party here contends that there was fraud in the inducement, misrepresentation, duress, overreaching, or illegality in the entering into of the General Release. Plaintiff and intervenors do, however, seek to establish mutual mistake, claiming at the time of the Release Mr. Singer, at least, lacked knowledge as to the allegedly substandard components used to upgrade the yacht's engines. In other words, they contend that lack of knowledge or awareness of facts giving rise to a cause of action amounts to mutual mistake and avoids the release at least as to the actions for negligence and fraud.

■ Lack of knowledge of an injury, damages, or a cause of action, however, is not the gross equivalent of mutual mistake. The law in New York has a more refined definition of mutual mistake sufficient to avoid a release. For example, in a personal injury action where the injury is known but

at the time of release its gravity is thought to be less than eventually develops, generally the release is upheld. In contrast, where an injury is unknown at the time a release is signed, the law finds a mutual mistake of fact that avoids the release or creates a cause of action not included in or barred by the release. 1B Warren's Negligence § 2.04 at 738–39 (Matthew Bender & Co.1976).

This distinction also holds in an action for damages to property. In *Rector of St. James Church v. City of New York*, 261 A.D. 614, 26 N.Y.S.2d 762 (2d Dept.1941), a Brooklyn church suffered damage during the excavation of a subway and sued the subway contractor. In 1933 the church received $1,000.00 in consideration for a release containing the same wording as to future legal actions as the release signed by Mr. Singer. Later, additional damage from the excavation came to light, caused by the failure to underpin the structure of the church. The Appellate Division held that the general release barred the later action for negligence even though the additional damages were unknown at the time of the execution of the release.

> Irrespective, therefore, of whether or not a cause of action had accrued for the damage which followed, the release served as a bar. Our opinion, however, upon this record, is that it cannot be claimed that such cause of action had not accrued at the time of the release. While recovery may be had for continuing or recurrent tortious invasions of the land of another ... in the absence of mistake on the one side or fraud, deceit and misrepresentation on the other, the effect of a release may not be avoided because of lack of knowledge of the true extent of injury sustained ... or even of the existence of a cause of action.

*Id.*, 261 A.D. at 617, 26 N.Y.S.2d at 764 (citations omitted).

Similarly, in the more recent case of *Mt. Read Terminal, Inc. v. LeChase Construction Corp.*, 58 A.D.2d 1034, 396 N.Y.S.2d 959 (4th Dept.1977), the Appellate Division held that the general release would be con-

strued against the releasor, and that the release could be asserted as a defense to claims arising both before and after its execution. In that case there was earlier litigation between plaintiff and defendant construction company over a building defendant was erecting for plaintiff. The earlier litigation concerned defendant's mechanic's lien and plaintiff's counterclaim for negligent construction of the roof. A general release by the plaintiff was part of the settlement of the first litigation. Plaintiff later sued defendant for two instances of damage to the roof, one occuring before the release and one after. The Appellate Division reversed the lower court and held that the later action was barred, noting particularly the negotiations surrounding the release, its broad language, the retention of the concrete floor warranty only, and the intent of the builders to have an end to a "bad job." In view of this the *Mt. Read* Court concluded:

> The release may be asserted as a defense to all claims arising from the construction, not only the damages occasioned by the roof collapse prior to execution of the release, but also the roof damage after the execution even though no litigation had yet been started.

*Id.*, 58 A.D.2d at ——, 396 N.Y.S.2d at 961 (citations omitted).

The state court action in this case concerned the modification of the yacht's engines. That Mr. Singer was not fully aware of the problems connected with the rebuilding of the engines is not enough. Lack of awareness of elements of the damage, the true extent of the damage, or the existence of a cause of action is not a mutual mistake of fact sufficient to set aside the General Release. The Release in this case bars all claims against Johnson & Towers, those existing at the time of the Release, both known and unknown. This is dictated by both the law and the language of the Release. The result may seem harsh, but it is the result Mr. Singer bargained for. As noted earlier, the Stipulation and Release plainly rid the defendant of all further liability for the engines' per-

formance. And plaintiff and intervenors have not presented any grounds why they should not be held to this effect. Accordingly, the claims for negligence and fraud are also barred.

## IV.

There is no basis for disputing that Mr. Singer explicitly and unambiguously terminated all warranties and released defendant from all contract claims by his General Release and Stipulation of Settlement of May 19, 1978. After reviewing the General Release and the case law of New York, it is equally clear that by the terms of the Release the negligence and fraud claims, and any warranty or product liability claims that might have survived under the Stipulation of Settlement, also were extinguished. As the defendant's motion is decided on this ground, it is unnecessary to address the time bar issues.

Accordingly, defendant Johnson & Towers' motion for summary judgment is granted, Rule 56(b), Fed.R.Civ.P., and all claims against it by Omaha Indemnity, San Mar, and Mr. Singer are dismissed.

SO ORDERED.