**TRAVELERS INDEMNITY COMPANY OF CONNECTICUT a/s/o The German School of New York, Plaintiff,**

v.

**THE LOSCO GROUP, INC., Pacific Iron Works, Inc., Fairway Testing Co., Inc., and Peter Englert & Associates, Inc., Defendants.**

No. 99CV11422(CM)(GAY).

United States District Court, S.D. New York.

March 23, 2001.

William R. Brocks, Jr., Milber Makris & Plousadis LLP, Garden City, NY.

Linda H. Kolodny, Robinson & Cole LLP, New York City.

## MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT ENGLERT'S MOTION TO DISMISS

McMAHON, District Judge.

Plaintiff Travelers Indemnity Company of Connecticut ("Travelers") brings a subrogation action for negligence and gross negligence against The Losco Group, Inc. ("Losco"), Pacific Iron Works, Inc. ("Pacific Iron Works"), Fairway Testing Co., Inc. ("Fairway Testing"), and Peter Englert & Associates, Inc. ("Englert"), and an additional action for breach of contract against Englert, on behalf of its insured, The German School of New York ("the School"), arising out of a collapse of a roof during the construction of a gymnasium at the School. Defendant Englert moves to dismiss the Fourth Claim for Relief for gross negligence, and the Ninth Claim for Relief for breach of contract, as asserted against it.

For the reasons stated below, Englert's motion to dismiss the Fourth Claim for Relief for gross negligence is denied, and the motion to dismiss the Ninth Claim for Relief for breach of contract, is granted.

### FACTUAL BACKGROUND

The German School is a private school located in White Plains, New York. On or about November 22, 1995, the School entered into an agreement with Englert ("the Agreement") whereby Englert agreed to provide architectural services in connection with the construction of a gymnasium on the premises of the School.

Pursuant to the Agreement, Englert was at all times responsible for (1) providing The German School with a design for the construction project, including structural, mechanical and electrical systems (Brocks Aff. at Ex. A. (Agreement at ¶ 2.1.1, 2.3.1)); (2) providing The German School with drawings and specifications setting forth in detail the requirements for the construction of the gymnasium (Id. at ¶ 2.4.1.); (3) inspecting the gymnasium during its construction (Id. at ¶ 2.6.5.); (4) protecting The German School against defects and deficiencies in the construction of the gymnasium (Id. at ¶ 2.6.5, 3.2.3.); (5) ensuring that the construction of the gymnasium was in accordance with project drawings and specifications (Id. at ¶ 2.6.5.); (6) reviewing shop drawings from the contractor (Id. at ¶ 2.6.12.); and (7) ensuring that necessary testing and inspection services were provided for the construction project (Id. at ¶ 2.6.11.)

The Agreement contains a provision which waives all rights between the School and Englert for damages that are covered by property insurance during construction. The provision states:

> The Owner and the Architect waive all rights against each other and against the contractors, consultants, agents and employees of the other for damages, but only to the extent covered by property insurance during construction, except such rights as they may have to the proceeds of such insurance as set forth in the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement. The Owner and Architect each shall require similar waivers

from their contractors, consultants and agents.

(Agreement at ¶ 9.4.)

The School took out a builder's risk insurance policy with Travelers, which covered the construction of the gymnasium on the premises of the School.

The School hired the Losco Group to construct the gymnasium, and the Losco Group hired Pacific Iron to fabricate the steel trusses. Englert retained Fairway Testing for the purposes of testing the integrity of the steel trusses before they were erected.

The roof structure of the gymnasium was designed to consist of five steel trusses that would support precast and prestressed concrete planks. On June 30, 1998, while the concrete planks were being placed on the steel trusses, one steel truss collapsed and fell forty feet to the gymnasium floor. Another truss failed but remained in place. The result was that tons of partially installed concrete planks fell to the floor and two workmen were injured.

In accordance with Travelers' builder's risk insurance policy to the German School, which covered the gymnasium construction, Travelers has paid over $800,000 to its insured in connection with the loss.

Travelers, as subrogee, filed a complaint alleging gross negligence and negligence against defendants Losco, Pacific Iron Works, and Fairway Testing, to recover the amount paid to The German School for its property damages. With permission of the Court, Travelers amended its complaint to include Englert as a defendant in the action. Travelers asserts three causes of action against Englert: gross negligence (Fourth Claim for Relief), negligence (Eighth Claim for Relief) and breach of contract (Ninth Claim for Relief). Plaintiffs have withdrawn their Eighth Claim for Relief, the cause of action sounding in negligence against Englert.

## DISCUSSION

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that fails to state a claim upon which relief can be granted. The standard of review on a motion to dismiss is heavily weighted in favor of the plaintiff. The Court is required to read a complaint generously, drawing all reasonable inferences from the complaint's allegations. *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 515, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). "In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court is required to accept the material facts alleged in the complaint as true." *Frasier v. General Electric Co.,* 930 F.2d 1004, 1007 (2d Cir.1991). The Court must deny the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Stewart v. Jackson & Nash,* 976 F.2d 86, 87 (2d Cir.1992) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### 1. Gross Negligence

Englert asserts that its motion to dismiss should be granted because the school (and therefore plaintiff, as subrogee) waived all of its rights against Englert for damages covered by any property insurance during construction. Plaintiff responds that Englert acted with gross negligence, and that parties cannot escape liability for damages occasioned by grossly negligent conduct.

Under New York law, "[i]t is the very essence of subrogation that a subrogee stands in the shoes of the subrogor and is entitled to all of the latter's rights, benefits and remedies." *Spier v. Erber,*

759 F.Supp. 1024, 1027 (S.D.N.Y.1991) (quoting *United States Fidelity and Guaranty Co. v. E.W. Smith Co.,* 46 N.Y.2d 498, 504, 414 N.Y.S.2d 672, 674, 387 N.E.2d 604 (1979)); *see also Servidori v. Mahoney,* 129 A.D.2d 944, 515 N.Y.S.2d 328 (3d Dep't 1987) (noting that the rights of a subrogee must be determined with respect to the rights of the subrogor); *Omaha Indem. Co. v. Johnson & Towers, Inc.,* 599 F.Supp. 215 (E.D.N.Y.1984) ("A subrogee generally must take the subrogor's rights and remedies as they are, along with their burdens, and subject to any defenses which may be available either against the subrogee or subrogor.") (internal quotation marks omitted).

■ Travelers, as subrogee, is therefore only entitled to the rights that The German School would have had against Englert. The contract between the school and Englert provided that "the owner and architect waive all rights against each other and against the contractors, consultants, agents and employees of the other for damages, but only to the extent covered by property insurance during construction . . ." (Agreement, at ¶ 9.4.) Where an insured agrees in a contract to waive all its rights against a particular party, such as Englert, that waiver would bar the insured's subrogee, as well as the insured, from subsequently asserting a claim against that party. *Omaha Indem.,* 599 F.Supp. at 218; *see also Mentis v. United States Postal Service,* 547 F.Supp. 164 (W.D.N.Y.1982); *Firemen's Ins. Co. of Washington D.C. v. Onwualia,* 1994 WL 706994 (S.D.N.Y. Dec.19, 1994). New York law generally will enforce a contract provision such as this, even though it absolves a party from its own negligence. *Colnaghi, U.S.A., Ltd. v. Jewelers Protection Servs., Ltd.,* 81 N.Y.2d 821, 823, 611 N.E.2d 282, 595 N.Y.S.2d 381 (1993). As a result of the contractual provision, the

School, and subrogee Travelers, have no rights against Englert under a theory of mere negligence.

■ Englert cannot escape liability through a contractual waiver clause, however, for damages occasioned by "grossly negligent conduct." While waiver clauses in commercial contracts "are enforceable to limit recovery for claims based on ordinary negligence, they will not preclude recovery in tort or breach of contract where the losses are the result of gross negligence." *Gold Connection Discount Jewelers, Inc. v. American District Telegraph Co., Inc.,* 212 A.D.2d 577, 578, 622 N.Y.S.2d 740, 741 (2d Dep't 1995). Used in this context, "gross negligence" differs in kind, not only degree, from claims of ordinary negligence. *Sommer v. Federal Signal Corp.,* 79 N.Y.2d 540, 550–53, 583 N.Y.S.2d 957, 593 N.E.2d 1365 (1992).

Recognizing that a claim against Englert for mere negligence would be barred by the Agreement, plaintiff has dropped that claim. The remaining question is whether plaintiff has stated a claim for gross negligence.

■ Gross negligence is defined as "conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." *Sommer,* 79 N.Y.2d at 550–53, 583 N.Y.S.2d 957, 593 N.E.2d 1365; *see also Gold Connection,* 212 A.D.2d at 578, 622 N.Y.S.2d 740; *Colnaghi,* 81 N.Y.2d at 823–24, 595 N.Y.S.2d 381, 611 N.E.2d 282. It is conduct of an aggravated character which discloses a failure to exercise even slight diligence, and a "disregard of the consequences which may ensue from the act, and indifference to the rights of others." *Civil Service Empl. Ass'n, Inc. v. Public Empl. Rel. Bd.,* 132 A.D.2d 430, 522 N.Y.S.2d 709 (3d Dep't 1987) (citation omitted). The issue of gross negligence is a question of fact for a jury to determine. *Gentile v.*

*Garden City Alarm Co.*, 147 A.D.2d 124, 130, 541 N.Y.S.2d 505, 509 (2d Dep't 1989).

■ Plaintiff has alleged sufficient facts to state a claim for gross negligence. Plaintiff alleges that Englert permitted the erection of the steel trusses despite the fact that the trusses welds had not been inspected; failed to notice, address or fix a discrepancy between shop drawings of the steel trusses and those which were submitted for the work; failed to ensure that Fairway Testing actually tested the steel trusses before they were erected; failed to request information about Pacific, the steel fabricator, which would have revealed that Pacific had never fabricated a steel truss before; failed to verify the welder's certifications; and failed to have the fabrication facility inspected by Pacific. Whether these failures rise to the level of reckless disregard for the rights of others, *Sommer*, 79 N.Y.2d at 550–53, 583 N.Y.S.2d 957, 593 N.E.2d 1365, is a question properly reserved for a jury.

Plaintiff emphasizes that discovery is ongoing, and that its claims for gross negligence against Englert cannot be fully established until discovery is completed. This Court agrees, and declines to convert Englert's 12(b)(6) motion to a motion for summary judgment at this stage of litigation.

Defendant's motion to dismiss the claim for gross negligence is denied.

2. Breach of Contract

Plaintiff also alleges that defendant breached the Agreement's provisions that required it to provide a proper constructible design for the project; to provide plans and specifications from which the Project could be safely built; to properly inspect the Project; to ensure that required shop drawings were provided and properly reviewed; and to ensure that proper testing and inspecting services were provided.

(Compl. at ¶ 65.) Defendant responds by again referring this Court to the waiver provision in the Agreement.

■ The waiver provision in the contract could not be clearer. It stated that the owner and architect "waive all rights against each other ... for damages, but only to the extent covered by property insurance during construction, ..." (Agreement at ¶ 9.4.) The property damage caused by the collapse of the steel trusses in the gymnasium were covered by the Travelers Policy. Construing the plain meaning of that provision, the School, and therefore its subrogee Travelers, waived all rights against Englert for damages covered by the property insurance. Plaintiff is therefore barred from asserting a claim against Englert for breach of contract.

Defendant Englert's motion to dismiss the Fourth Claim for Relief for gross negligence is denied, and the motion to dismiss the Ninth Claim for Relief for breach of contract, is granted.

This constitutes the decision and order of the Court.