**TRAVELERS INDEMNITY COMPANY OF CONNECTICUT a/s/o The German School of New York, Plaintiff,**

v.

**THE LOSCO GROUP, INC., Pacific Iron Works, Inc., Fairway Testing Co., Inc., and Peter Englert & Associates, Inc., Defendants.**

**No. 99 CV 11422(CM)(GAY).**

United States District Court, S.D. New York.

May 2, 2002.

James C. Clerkin, Kral, Clerkin, Redmond, Ryan, Perry & Girvan, New York City, Michael B. Golden, Robinson & Cole, L.L.P., New York City, for Travelers Indem. Co. of Connecticut.

James C. Clerkin, Kral, Clerkin, Redmond, Ryan, Perry & Girvan, New York City, Bennett J. Lee, Watt, Tieder, Hoffar & Fitzgerald, LLP, McLean, VA, Harold M. Pressberg, Norton & Christensen, Goshen, NY, for Losco Group.

James C. Clerkin, Kral, Clerkin, Redmond, Ryan, Perry & Girvan, New York City, for Fairway Testing Co., Inc.

William R. Brocks, Milber Makris Plousadis & Seiden, LLP, Garden City, NY, for Peter Englert & Assoc., Inc.

## MEMORANDUM DECISION AND ORDER DENYING THE LOSCO GROUP'S MOTION FOR SUMMARY JUDGMENT AND GRANTING FAIRWAY TESTING'S MOTIONS FOR SUMMARY JUDGMENT

McMAHON, District Judge.

Plaintiff Travelers Indemnity Company of Connecticut ("Travelers") brought a subrogation action for negligence and gross negligence against The Losco Group, Inc. ("Losco"), Pacific Iron Works, Inc. ("Pacific Iron Works"), Fairway Testing Co., Inc. ("Fairway Testing"), and Peter Englert & Associates, Inc. ("Englert"), and an additional action for breach of contract against Englert, on behalf of its insured, The German School of New York ("the School"), arising out of a collapse of a steel truss during the construction of a gymnasium at the School. The breach of contract claim against Englert was previously dismissed by this Court pursuant to Fed.R.Civ.P. 12(b)(6) and Travelers voluntarily withdrew its claim of negligence against Englert. Defendants Losco and Fairway Testing move for summary judgment pursuant to Fed.R.Civ.P. 56 on the negligence and gross negligence claims against them.

For the reasons stated below, Losco's motion for summary judgment is denied and Fairway Testing's motion for summary judgment is granted.

### FACTUAL BACKGROUND

The German School is a private school located in White Plains, New York. On or about November 22, 1995, the School entered into an agreement with Englert whereby Englert agreed to provide architectural services in connection with the construction of a gymnasium on the premises of the School (the "Englert Agreement"). The terms of this contract contained a waiver of subrogation with respect to damages covered by property insurance. This waiver was not limited to the parties to the contract; the waiver extended to all contractors, consultants, agents or employees of either Englert or the German School. Maher Aff. ¶ 5. The waiver provision states:

> The Owner and the Architect waive all rights against each other and against the contractors, consultants, agents and employees of the other for damages, but only to the extent covered by property insurance during construction, except such rights as they may have to the proceeds of such insurance as set forth in the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement. The Owner and Architect each shall require similar waivers from their contractors, consultants and agents.

Englert Agreement at ¶ 9.4.

On or about July 23, 1997, the School entered into an agreement with Losco whereby Losco agreed to provide certain construction services in connection with the construction of the School's gymnasium (the "Losco Agreement"). Incorporated into the Losco Agreement are American Institute of Architects general conditions, including a "Waivers of Subrogation" provision. This provision states:

> *Waivers of Subrogation:* The Owner [the School] and Contractor [Losco] waive all rights against (1) each other and any of their subcontractors, subsubcontractors, agents and employees, each of the other, and (2) the Architect,

Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Paragraph 11.3 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the Architect, Architect's consultants, separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

Losco Agreement at ¶ 11.3.7. In addition, the Losco Agreement provided that:

Property insurance shall be on an all-risk policy form and shall insure against the perils of fire and extended coverage and physical loss or damage including, without duplication of coverage, theft, vandalism, malicious mischief, *collapse*, falsework, temporary buildings and debris removal including demolition occasioned by enforcement of any applicable legal requirements, and shall cover reasonable compensation for Architect's services and expenses required as a result of such insured loss. Coverage for other perils shall not be required unless otherwise provided in the Contract Documents.

Losco Agreement at ¶ 11.3.1.1.

On or about January 20, 1998, the School took out a builder's risk insurance policy issued by Travelers, which covered the construction of the gymnasium on the premises of the School.

During the construction of the gymnasium, Fairway Testing, pursuant to an oral agreement with Englert, performed inspection and testing services at the School. Pursuant to the oral agreement, Fairway agreed to supply inspection and testing services on an "as needed basis," if and when they were contacted during the course of the project. *See* Maher Aff. ¶ 6, Ex. B (Aguanno Dep. At 14–15, 22). At that time it was also agreed if Fairway Testing performed inspection and testing services, it would be paid by Englert in accordance with the rates listed in a per diem fee schedule. Maher Aff. ¶ 6, Ex. C.

The roof structure of the gymnasium was designed to consist of five steel trusses that would support precast and prestressed concrete planks. On June 30, 1998, while the concrete planks were being placed on the steel trusses, one steel truss collapsed and fell forty feet to the gymnasium floor. Another truss failed but remained in place. The result was that tons of partially installed concrete planks fell to the floor and two workmen were injured.

In accordance with Travelers' builder's risk insurance policy to the School, which covered the gymnasium construction, Travelers has paid over $800,000 to the School in connection with the loss.

Travelers, as subrogee, filed a complaint alleging gross negligence and negligence against defendants Losco, Pacific Iron Works, and Fairway Testing, to recover the amount paid to the School for its property damages. Travelers amended its

complaint to include Englert as a defendant in the action, asserting three causes of action against Englert: gross negligence, negligence and breach of contract. On March 23, 2001, this Court granted Englert's motion to dismiss plaintiff's Ninth Claim for Relief for breach of contract and denied Englert's motion to dismiss plaintiff's Fourth Claim for Relief for gross negligence. Plaintiff voluntarily withdrew its Eighth Claim for Relief for negligence. *Travelers Indemnity Company of Connecticut v. The Losco Group, et al.*, 136 F.Supp.2d 253 (S.D.N.Y.2001).

On November 8, 2001, Losco moved for summary judgment on the claims of negligence and gross negligence (Second and Sixth Claims for Relief). On November 26, 2001, Fairway Testing moved for summary judgment on the claims of negligence and gross negligence against it (Third and Seventh Claims for Relief). No timely opposition was submitted to Fairway Testing's motion.[1] In its response to Losco's motion for summary judgment, plaintiff voluntarily withdrew its Sixth Claim of Relief for negligence against Losco based upon the contractual waiver provision in the Losco Agreement. Plaintiff opposes Losco's motion insofar as it seeks dismissal of the Second Claim for gross negligence.

## DISCUSSION

### I. *Summary Judgment Standard*

Under Federal Rule of Civil Procedure 56(c), the court will grant summary judgment if the evidence offered shows that there is no genuine issue as to any material fact and that the movants are entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Furthermore, where a plaintiff cannot establish an essential element of his claim, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* at 322–33, 106 S.Ct. 2548. On a motion for summary judgment, the court views the record in the light most favorable to the non-movants and resolves all ambiguities and draws all reasonable inferences against the movants. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Donahue v. Windsor Locks Bd. of Fire Commn'rs*, 834 F.2d 54, 57 (2d Cir.1987).

### II. *Traveler's Standing*

Under New York law, "[i]t is the very essence of subrogation that a subrogee stands in the shoes of the subrogor and is entitled to all of the latter's rights, benefits and remedies." *Spier v. Erber*, 759 F.Supp. 1024, 1027 (S.D.N.Y.1991) (quoting *United States Fidelity and Guaranty Co. v. E.W. Smith Co.*, 46 N.Y.2d 498, 504, 414 N.Y.S.2d 672, 674, 387 N.E.2d 604 (1979)); *see also Travelers Indemnity*, 136 F.Supp.2d 253; *Servidori v. Mahoney*, 129 A.D.2d 944, 515 N.Y.S.2d 328 (3d Dep't 1987) (noting that the rights of a subrogee must be determined with respect to the rights of the subrogor); *Omaha Indem. Co. v. Johnson & Towers, Inc.*, 599 F.Supp. 215 (E.D.N.Y.1984) ("A subrogee generally must take the subrogor's rights and remedies as they are, along with their burdens, and subject to any defenses which may be available either against the subrogee or subrogor.") (internal quotation marks omitted).

---

1. Travelers submitted no response whatsoever to Fairway Testing's motion. Losco submitted, along with its Reply Memorandum and Affirmation in support of its motion for summary judgment, opposition to Fairway Testing's motion. On January 18, 2002, by order of this Court, Losco's opposition was stricken as untimely.

Travelers, as subrogee, is therefore entitled only to the rights that the School would have had against Losco and Fairway Testing.

### III. *Travelers' Claim of Gross Negligence Against Losco*

Losco asserts that its motion for summary judgment pursuant to Rule 56 should be granted because the School (and therefore Travelers, as subrogee) waived all of its rights against Losco for damages covered by any property insurance during construction. Losco further asserts that, even if there was no effective waiver, Travelers has failed to establish a prima facie case of gross negligence against Losco. Travelers responds that the waiver provisions do not preclude recovery in tort where the losses are the result of gross negligence, and Travelers has established a prima facie case of gross negligence against Losco.

■ The Losco Agreement provided that Losco and the School "waive all rights against . . . each other . . . for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Paragraph 11.3 or other property insurance applicable to the Work." Losco Agreement at ¶ 11.3.7. As noted previously by this Court, as a result of such a contractual provision, the School, and subrogee Travelers, have no rights against Losco under a theory of mere negligence. *Travelers Indemnity*, 136 F.Supp.2d 253. As this Court has also noted, Losco cannot waive liability for damages occasioned by "grossly negligent conduct." *Id.* While waiver clauses in commercial contracts "are enforceable to limit recovery for claims based on ordinary negligence, they will not preclude recovery in tort or breach of contract where the losses are the result of gross negligence." *Gold Connection Discount Jewelers, Inc. v. American District Telegraph Co., Inc.,*

212 A.D.2d 577, 578, 622 N.Y.S.2d 740, 741 (2d Dep't 1995).

■ Losco urges this Court to adopt the holding of *Behr v. Hook*, 787 A.2d 499 (Vt.2001). In *Behr*, the court held that, under the circumstances of that case, the waivers of subrogation provision in a construction contract for a private residence precluded claims for gross, as well as ordinary, negligence. This case is not controlling, however. It is the law in New York that claims for gross negligence are *not* precluded by waivers of subrogation provisions. *See Federal Ins. Co. v. Honeywell, Inc.*, 243 A.D.2d 605, 606, 663 N.Y.S.2d 247, 248 (2d Dep't 1997) (citing cases). Thus, the remaining question is whether Travelers has raised a genuine issue of fact on its claim for gross negligence.

■ Gross negligence is defined as "conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." *American Telephone and Telegraph Co. v. The City of New York et al.*, 83 F.3d 549, 556 (2d Cir.1996) (*quoting Colnaghi*, 81 N.Y.2d at 823–24, 595 N.Y.S.2d 381, 611 N.E.2d 282). To constitute gross negligence, "the act or omission must be of an aggravated character, as distinguished from the failure to exercise ordinary care." *Curley v. AMR Corp., et al.*, 153 F.3d 5, 13 (2d Cir.1998) (*quoting* 79 N.Y. Jur.2d *Negligence* § 37 (1989)). In order to establish a prima facie case in gross negligence, a plaintiff "must prove by a fair preponderance of the credible evidence" that the defendant "not only acted carelessly in making a mistake, but that it was so extremely careless that it was equivalent to recklessness." *Hong Kong Export Credit Insurance Corp. v. Dun & Bradstreet*, 414 F.Supp. 153, 160 (S.D.N.Y.1975).

■ Under New York law, a mistake or series of mistakes alone, without a showing

of recklessness, is insufficient for a finding of gross negligence. *American Telephone and Telegraph*, 83 F.3d at 549 (*citing Sommer v. Federal Signal Corp.*, 79 N.Y.2d 540, 555, 583 N.Y.S.2d 957, 963–64, 593 N.E.2d 1365, 1371–72 (1992)); *see also Fireman's Fund Ins. v. ADT Sec. Sys., Inc.*, 847 F.Supp. 291, 298 (E.D.N.Y.1994) (granting summary judgment on the grounds that an alarm company's failure to notify subscriber of guard's "gut feeling" about burglary and about number of tripped alarm zones was not grossly negligent response to burglar alarms and fell within contractual limitation on alarm company's liability); *Stuart Rudnick, Inc. v. Jewelers Protection Servs., Ltd.*, 194 A.D.2d 317, 598 N.Y.S.2d 235, 236 (App. Div.1993) (summary judgment appropriate in case where defendant's failure to maintain, in working order, a video camera overseeing the safety deposit boxes in which plaintiff stored its jewelry "while clearly negligent, and even grossly negligent as used in other contexts," did not satisfy gross negligence standard).

■ Genuine issues of fact exist with regard to Losco's alleged gross negligence in the construction of the gymnasium. In response to Losco's motion for summary judgment, plaintiff submitted two expert reports—one by Vincent Riverso of Riverso Associates, Inc. and one by Feld, Kaminetzsky & Cohen, P.C. Katz Aff., Exs. A & B. The Riverso report raises issues of fact regarding Losco's gross negligence that include (1) the assigning of the fabrication and erection of roof structural trusses to Pacific, a non-AISC (American Institute of Steel Construction) certified subcontractor, in alleged violation of the Losco Agreement; (2) allowing Pacific to erect the trusses Pacific had never done such a project before; (3) failing to ensure the ultrasound testing of the trusses; and (4) allowing non-certified welders to manufacture the trusses. The Feld, Kaminetsky & Cohen report lists certain deficiencies in

the construction of the gymnasium, including faulty welding at several critical splice welded connections and a failure to conduct ultrasonic testing of the welds. In addition, a Metallurgical Evaluation conducted by City Testing & Research Laboratories, Inc. reports the existence of unacceptable welds on examined trusses. Katz Aff., Ex. C.

Plaintiff has established a genuine issue of material fact sufficient to preclude summary judgment for Losco. Losco's motion for summary judgment is denied. The issue of gross negligence will be submitted to the jury.

## IV. *Travelers' Claims Against Fairway Testing are Dismissed*

During the construction of the gymnasium, Fairway Testing performed inspection and testing services on the campus of the German School. These services were performed by Fairway pursuant to an oral agreement with Englert. Pursuant to this oral agreement, Fairway agreed to supply inspection and testing services on an "as needed basis," is and when they were contacted during the course of the project. It was also agreed that, if Fairway performed inspection and testing services, it would be paid by Englert in accordance with rates listed in a per diem fee schedule. Englert indicated its approval of this fee schedule on August 6, 1997. Since Fairway was paid by Englert for its services, it was acting as a contractor engaged by Englert whenever it performed work in connection with this project.

■ Article 9, section 9.4 of the Englert Agreement between Englert and the German School specifically provides that the School shall waive its right in subrogation against Englert and any "contractors" engaged by Englert in connection with the project. As this Court found in its Memorandum, Decision and Order of March 23,

2001, the School has waived its rights to pursue a claim under the Englert Agreement under a theory of mere negligence. *Travelers Indemnity,* 136 F.Supp.2d 253. Furthermore, Travelers has already voluntarily dismissed its negligence claims against Englert and Losco. Travelers' negligence claim against Fairway must also be dismissed.

Travelers' claim for gross negligence against Fairway Testing must be dismissed as well. The motion for summary judgment is unopposed and it has merit.

Federal Rule of Civil Procedure 56(e) sets out the burden placed on one who seeks to oppose a summary judgment motion and the consequences of failing to meet that burden. Rule 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided by this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

Summary judgment is appropriate only when the moving party has met its burden of production under Rule 56(e) "to show initially the absence of any genuine issue concerning any material fact." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). If the evidence presented in support of the summary judgment motion does not meet this burden, " 'summary judgment must be denied even if no opposing evidentiary material is presented.'" *Id.* at 160, 90 S.Ct. 1598 (quoting Fed.R.Civ.P. 56 advisory committee notes to the 1963 amendments). "Thus, it is clear that even when a nonmoving party chooses the per-ilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. If it has not, summary judgment is inappropriate, for '[n]o defense to an insufficient showing is required.'" *Amaker v. Foley,* 274 F.3d 677, 681 (2d Cir.2001) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. at 161, 90 S.Ct. 1598).

Fairway Testing submitted an affidavit and memorandum of law in support of its motion for summary judgment. Fairway claims that "discovery has not revealed any evidence that Fairway acted in a manner that was so extremely careless that it was equivalent to recklessness," which is a necessary factor in a claim for gross negligence. *See Hong Kong Export Credit Ins. Corp. v. Dun & Bradstreet,* 414 F.Supp. 153, 160 (S.D.N.Y.1975). From the limited evidence before this Court, it is evident that Travelers can not sustain a claim of gross negligence against Fairway Testing. The expert reports submitted by plaintiff only directly address the actions (or inactions) of Englert and Losco. The deposition testimony of Patsy Aguanno, owner of Fairway Testing, demonstrates that Fairway did not act recklessly in performing its job as Englert's contracted-for inspector. Nothing in Fairway's conduct "smacks" of intentional wrongdoing, and at worst, one could argue that their actions indicated a failure to exercise ordinary care. This is not sufficient to maintain a finding of gross negligence. Fairway Testing's motion for summary judgment is granted.

## CONCLUSION

For the reasons stated above, Losco's motion for summary judgment is denied,

and Traveler's motion for summary judgment is granted.

This constitutes the decision and order of the Court.