OPINION OF THE COURT
 

 Smith, J.
 

 The issue here is whether the defendant insurers have a duty to defend Massena Memorial Hospital and related litigants in an underlying federal lawsuit. We conclude that one insurer has a duty to defend, and we, therefore, modify the order of the Appellate Division.
 

 Olof Franzon is a duly licensed physician and the sole shareholder in his practice, Women’s Medical & Surgical Health Care, P.C. Franzon and Women’s Medical brought the underlying federal action for damages against Massena Memorial Hospital, its Board of Managers, its Medical Executive Committee and a number of physicians and hospital executives, alleging a conspiracy to deprive Franzon of his civil rights as guaranteed by the First and Fourteenth Amendments to the United States Constitution and 42 USC § 1983, and alleging that he is entitled to attorneys’ fees pursuant to 42 USC § 1988. More specifically, Franzon alleged that he publically advocated that the hospital provide nurse-midwifery services and further alleged that the hospital had not previously provided such services for anticompetitive reasons. Franzon alleged that in response, the hospital engaged in a concerted campaign of harassment designed to punish him for exercising his right to free
 
 *443
 
 speech. The campaign consisted of defendants’ (1) “overt and malicious acts” designed to “excommunicate him from, and ruin him in, the Massena medical community,” (2) disparagement in internal reviews and to his patients and (3) refusing to renew his hospital privileges. Franzon alleged that this harassment caused him to suffer various injuries, including “extreme emotional distress.” Franzon also alleged defamation, tortious interference with business relations and tortious inference with contract pursuant to the common law of New York State.
 

 In the present action, the Town of Massena, the owner of Massena Memorial Hospital, and the hospital (collectively, the hospital) seek a declaration that three of their insurers— Healthcare Underwriters Mutual Insurance Company (HUM), Federal Insurance Company (Federal) and Physicians’ Reciprocal Insurers (PRI) — owe them a defense in the federal action. Supreme Court held that “each insurer owes their insureds a defense in the underlying lawsuit” because each policy did not exclude coverage of all of the underlying claims as a matter of law. The Appellate Division modified by reversing the denial of summary judgment. It concluded that the alleged acts were either intentional, and therefore excluded as a matter of public policy, or specifically excluded under the applicable policies’ provisions (281 AD2d 107 [2001]). We granted leave to appeal to the hospital and to third-party defendant Dr. Rowe-Button. We conclude that HUM is obligated to defend the federal action and we, therefore, modify the order of the Appellate Division.
 

 “[T]he duty to defend is broader than the duty to indemnify”
 
 (Fitzpatrick v American Honda Motor Co.,
 
 78 NY2d 61, 65 [1991];
 
 see also Goldberg v Lumber Mut. Cas. Ins. Co.,
 
 297 NY 148, 154 [1948]). “[A]n insurer’s duty to defend its insured arises whenever the allegations in a complaint state a cause of action that gives rise to the reasonable possibility of recovery under the policy”
 
 (Fitzpatrick,
 
 78 NY2d at 65). If the allegations of the complaint are even potentially within the language of the insurance policy, there is a duty to defend
 
 (see Technicon Elecs. Corp. v American Home Assur. Co.,
 
 74 NY2d 66, 73 [1989];
 
 Ruder & Finn v Seaboard Sur. Co., 52
 
 NY2d 663, 669-670 [1981]).
 
 “If any of the
 
 claims against [an] insured arguably arise from covered events, the insurer is required to defend the entire action”
 
 (Frontier Insulation Contrs. v Merchants Mut. Ins. Co.,
 
 91 NY2d 169,175 [1997]). Indeed, “[t]he duty to defend arises whenever the allegations in a complaint against the insured fall within the scope of the risks undertaken by the
 
 *444
 
 insurer * * * [and, it is immaterial] that the complaint against the insured asserts additional claims which fall outside the policy’s general coverage or within its exclusory provisions”
 
 (Seaboard Sur. Co. v Gillette Co.,
 
 64 NY2d 304, 310 [1984] [citations omitted]). When an exclusion clause is relied upon to deny coverage, the burden rests upon the insurance company to demonstrate that the allegations of the complaint can be interpreted only to exclude coverage
 
 (see International Paper Co. v Continental Cas. Co.,
 
 35 NY2d 322, 325 [1974];
 
 Technicon,
 
 74 NY2d at 73-74). The merits of the complaint are irrelevant and, “[a]n insured’s right to be accorded legal representation is a contractual right and consideration upon which his premium is in part predicated, and this right exists even if debatable theories are alleged in the pleading against the insured”
 
 (International Paper,
 
 35 NY2d at 325).
 

 HUM contracted with the hospital for coverage under three policies — the Personal Injury Liability (PIL) policy, the Hospital Professional Liability (HPL) policy, and the Comprehensive General Liability (CGL) policy. The plain language of the PIL policy obligates HUM to provide a defense to plaintiff. Specifically, the PIL policy covers all personal injury damages arising out of various offenses including “the publication or utterance of a libel or slander” or of other defamatory or disparaging material. The complaint contains allegations that the hospital “intentionally and maliciously made false statements to Franzon’s patients, potential patients, and the community at large in an effort to damage his reputation as a doctor.” The complaint additionally alleges that the statements are untrue.
 
 *
 

 HUM relies on its exclusion for defamatory statements made within a business enterprise with knowledge of their falsity. Defamation is defined as a false statement that exposes a person to public contempt, ridicule, aversion or disgrace
 
 (see Foster v Churchill,
 
 87 NY2d 744, 751 [1996]). A party alleging defamation must allege that the statement is false
 
 (see Immuno AG. v Moor-Jankowski, 77
 
 NY2d 235, 245 [1991],
 
 cert denied
 
 500 US 954). In addition, where the party is a public figure, that party must allege that the statement was made with “actual malice,” defined as either knowledge of the false
 
 *445
 
 hood or recklessness as to the falsehood
 
 (see New York Times Co. v Sullivan,
 
 376 US 254, 279-280 [1964]). Where the party alleging defamation is not a public figure, a showing of common-law malice, or ill will, is necessary
 
 (see Liberman v Gelstein,
 
 80 NY2d 429, 437 [1992]). Even though a statement is defamatory, a qualified privilege exists where the communication is made to persons who have some common interest in the subject matter
 
 (see id.
 
 at 437-439).
 

 The District Court in the underlying action held that Franzon was a limited public figure who must prove actual malice, namely that the statements were false and were made with knowledge of the falsity or recklessness as to their falsity
 
 (see Franzon v Massena Mem. Hosp.,
 
 89 F Supp 2d 270, 278 [ND NY 2000]). Even if the allegedly defamatory statements concerned the “business enterprise” of Franzon’s practice of medicine, and even if the statements were intentionally and maliciously made, there was no allegation that the statements were made with knowledge of their falsity. Moreover, because Franzon is a limited public figure, actual malice requires only recklessness as to the truth of the statement, and not knowledge of the falsity. Thus, defense coverage is proper based on the policy terms.
 

 HUM also argues, and the Appellate Division agreed, that it had no duty to indemnify because the allegations of malice were equivalent to allegations of intentional wrongdoing. This Court has stated that “an insurer can be relieved of its duty to defend if it establishes as a matter of law that there is no possible factual or legal basis on which it might eventually be obligated to indemnify its insured under any policy provision”
 
 (Allstate Ins. Co. v Zuk,
 
 78 NY2d 41, 45 [1991]). As a matter of policy, conduct engaged in with the intent to cause injury is not covered by insurance
 
 (see Public Serv. Mut. Ins. Co. v Goldfarb,
 
 53 NY2d 392, 399-400 [1981];
 
 Messersmith v American Fid. Co.,
 
 232 NY 161, 163-165 [1921]). As we have stated, because of Franzon’s status as a limited public figure, he could recover on his defamation claim if he established that defendants’ defamatory statements were made with
 
 reckless
 
 disregard of their truth. Such defamatory statements would be covered by HUM’S policy and would not be precluded by public policy. Because HUM has a duty to defend the defamation claims under the HUM PIL policy, it consequently has a duty to defend the entire action brought under any of the HUM policies
 
 (see Frontier Insulation Contrs. v Merchants Mut. Ins.,
 
 91 NY2d at 175 [“If any of the claims against the insured argu
 
 *446
 
 ably arise from covered events, the insurer is required to defend the entire action”]). We therefore hold that HUM necessarily has a duty to defend all of the claims. Since HUM is obligated to defend the action under the PIL policy, it is unnecessary for us to discuss the HPL and the CGL policies.
 

 Federal Insurance Company has no duty to defend the hospital. Its Executive Liability and Indemnification Insurance Policy provides coverage for “all Loss” that the insured is “legally obligated to pay” for any “Wrongful Act.” A wrongful act is “any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed * * * by any Insured Person, individually or otherwise, in his Insured Capacity, or any matter claimed against him solely by reason of his serving in such Insured Capacity.” “Insured Capacity” means as a director or officer. The policy limits this coverage by excluding, among other things, any loss “arising out of’ or otherwise related to “bodily injury * * * libel, slander, defamation of character” or similar torts. The policy also excludes any loss resulting from performance of “professional services,” including services on “a formal medical accreditation or similar medical professional board or committee of an Insured.” This broad exclusionary language negates coverage for all but the tortious interference claim in the Franzon complaint.
 

 The hospital has not, however, met its burden of showing that the tortious conduct is covered. Franzon’s tortious interference claims against the hospital are centered around three physicians’ failure to refer patients to him. This conduct could only occur in the doctors’ respective roles as members of an insurance network. Franzon’s complaint, however, does not allege whether the doctors’ conduct in question occurred while they were acting in their “insured capacity” as officers or directors or otherwise. Federal argues that the conduct surrounding the tortious interference claim occurred outside the doctors’ insured capacity, or in the alternative, in the excluded performance of “professional services” category. Once the insurance company asserted the exclusion, the hospital defendants had the burden of showing that the conduct alleged was covered and they have failed to make that requisite showing. Federal therefore has no duty to defend under the policy.
 

 Physicians’ Reciprocal Insurers is also under no duty to defend the individual doctors. Under the PRI policy, the insurer was obligated to pay “all sums which you become legally obligated to pay for a claim,” excluding punitive damages, and to defend every “claim” arising from the insured’s performance of
 
 *447
 
 “professional services.” “Professional services” includes “services as a member of a formal accreditation board or any committee of a hospital where” the insured is “engaged in accreditation review and standards review.” The policy’s exclusions are extensive including “any willful, fraudulent or malicious civil act”; any claim resulting from “defamation, libel, slander” and similar torts; and any claim for interference with contract or with prospective business advantage. The policy stated that the exclusions applied even after the amendment of the definition of professional services to include accreditation review and standards review. These exclusions eliminate any duty PRI could have to defend the hospital against Franzon’s claims.
 

 Accordingly, the order of the Appellate Division should be modified, without costs, by reinstating so much of Supreme Court’s order as declared a duty to defend by HUM and, as so modified, affirmed.
 

 Judges Levine, Ciparick, Wesley, Rosenblatt and Graffeo concur; Chief Judge Kaye taking no part.
 

 Order modified, etc.
 

 *
 

 The complaint also specifies that Dr. Jhaveri told another patient that Franzon “was going to be booted out of Massena”; that it was “bull” that a patient had an ultrasound in Franzon’s office as the patient “should not have any ultrasounds done in Franzon’s office”; and that Dr. Maresca told a resident during a repeat mammogram that “if you were Dr. Franzon’s patient, I wouldn’t even be talking to you.”