OPINION OF THE COURT
David Stadtmauer, J.
In this three defendant trial for attempted robbery and related weapons counts, the People seek to preclude the defense from cross-examining the complaining witness relative to his status as an illegal alien. The People offer no law in support of *18 their application; however, it is their position that the court should make this decision as a matter of public policy. Otherwise, say the People, an unfortunate message would be sent to the criminal community that it would be open season on illegal aliens who would be fearful of coming forward. The defendants oppose this application.
It is initially noted that, absent abuse or improvidence, the “nature and extent of cross-examination is subject to the sound discretion of the Trial Judge” (People v Schwartzman, 24 NY2d 241, 244, cert denied 396 US 846). It is also noted that decisions within the ambit of Sandoval (People v Sandoval, 34 NY2d 371) and its progeny inure to the benefit of testifying defendants at trial, not to nondefendant witnesses (People v Batista, 113 AD2d 890). Indeed, criminal defendants are afforded clear protections, under both the United States Constitution (6th, 14th Amends) and the New York State Constitution (art I, § 6), to confront their accusers. (See also, Douglas v Alabama, 380 US 415, 418.) This applies not only to evidence relative to the case-in-chief but also to matters of credibility.
Thus, it is clear that any shielding of the complainant’s illegal status from the jury could only come at the expense of the defendants’ rights to confrontation and a fair trial. Moreover, the very nature of the act of entering this country illegally or of maintaining illegal residence here is fraudulent, and the defendants should not be prevented from inquiring as to “any immoral, vicious or criminal act * * * which may reflect upon [the complainant’s] character and show him to be unworthy of belief.” (Batista, supra at 891.) This is assuming, of course, that the questions are asked in good faith and upon a reasonable basis in fact (People v Jones, 193 AD2d 696, 697).
In certain limited instances, complainants may be protected by having their allegedly checkered pasts placed into a zone of evidentiary untouchability. Thus, for example, we have shield laws with respect to sex crimes (see, CPL 60.42, 60.43). However, such shield laws are legislative in nature and are intended to express the clear public policy of this state to “bar harassment of victims and confusion of issues” (Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 60.42, 60.43, at 9, 14-15). General public policy may also be articulated by our appellate courts. (See, e.g., Zurich Ins. Co. v Shearson Lehman Hutton, 84 NY2d 309, 317; Town of Massena v Healthcare Underwriters Mut. Ins. Co., 281 AD2d 107, 111-112, mod 98 NY2d 435.) Trial courts, on the other hand, being courts of first instance and *19 mindful of the weight of stare decisis and legislative authority, ought not to be eager to establish or declare public policy sua sponte. This is especially true in cases such as this, where the references to “public policy” by a party to the litigation are vague, unsupported, and questionable.
Finally, it is noted that questions regarding public policy are not, generally speaking, a proper subject of judicial notice. A court may notice facts which are matters of “common and general knowledge, well-established and authoritatively settled,” including “notorious facts,” but certainly not of disputed issues or of contested matters of public policy. (See, generally, Prince, Richardson on Evidence § 2-201 et seq., at 29, 31 [Farrell 11th ed], and the cases cited therein.)
For all the foregoing reasons, I decline to limit the defendants’ cross-examination of the complainant in the manner requested. The People’s application is denied.