**ST. PAUL FIRE AND MARINE INSURANCE COMPANY a/s/o the Durst Organization, Inc., and Four Times Square Association, L.L.C., Plaintiffs,**

v.

**UNIVERSAL BUILDERS SUPPLY and Tishman Construction Company of New York, Defendants.**

**Universal Builders Supply, Inc., Third–Party Plaintiff,**

v.

**TIG Insurance Company, AIU Insurance Company, and Royal Insurance Company of America, Third–Party Defendants.**

No. 00–CV–04634 (KMW).

United States District Court, S.D. New York.

March 31, 2004.

---

See also 279 F.Supp.2d 169.

Chris Christofides, L'Abbate, Balkan, Colavita & Contini, LLP, New York, NY, for Plaintiffs.

Justin E. Driscoll, III, Plunkett & Jaffe, P.C., New York, NY, for Defendants and ThirdParty Plaintiff.

Eric A. Portugese, Lester, Schwab, Katz & Dwyer, L.L.P., Sherri N. Robinson, Lustig & Brown, L.L.P., New York, NY, for ThirdParty Defendants.

## ORDER

KIMBA M. WOOD, District Judge.

This action arises from the collapse of a 49–story scaffolding structure on a construction site. The insurance company that issued a builder's risk policy for the site seeks to recover from the contractor

responsible for the scaffolding approximately $20 million that the insurer paid to cover damages caused by the collapse. The contractor filed a third-party complaint against three of its liability insurers, seeking to have them defend and indemnify it in this action. Third-party defendants moved to dismiss the underlying complaint against the contractor and the third-party complaint.

For the reasons stated below, the Court grants all motions to dismiss.

## I. *Background*

In 1997, the Durst Organization, Inc. ("Durst") and Four Times Square Association, L.L.C. ("FTSA") contracted with Tishman Construction Corporation of New York ("Tishman"), as construction manager, and Universal Builders Supply, Inc. ("UBS"), as head contractor, for UBS to erect a building located at Four Times Square, New York, New York. The contract contained an Insurance Rider (the "Rider") that specified the several parties' obligations for obtaining insurance coverage for the project. Durst and FTSA agreed to obtain a builder's risk insurance policy that would cover Durst, FTSA, UBS and all sub-contractors. The Rider contained a clause that waived all parties' rights of recovery against each other or third parties for any claims that would be covered by the Policy. The Rider also specified that the Policy must grant its insureds the authority to waive such a right of recovery; such a clause in an insurance policy is called a waiver of subrogation clause. Durst obtained a builder's risk policy (the "Policy") from St. Paul Fire and Marine Insurance Company ("St. Paul") that contained a waiver of subrogation clause.[1]

On July 21, 1998, a 49-story temporary scaffold/hoist structure at the Four Times Square site, designed and built by UBS, collapsed, causing extensive damage to the site and surrounding area, and killing one person. St. Paul paid approximately $20 million to Durst and FTSA to satisfy claims they filed pursuant to the Policy.[2]

St. Paul, as Durst and FTSA's subrogee, now seeks to recover from UBS the $20 million St. Paul paid Durst and FTSA pursuant to the Policy. St. Paul alleges that UBS is liable for the losses covered by the Policy under theories of negligence, gross negligence, strict liability, professional malpractice, breach of contract, products liability and breach of warranties.[3]

UBS has filed a third-party complaint against the three insurance carriers that issued liability policies related to the Four Times Square project, all of which name UBS as an insured: TIG Insurance Company ("TIG"), AIU Insurance Company ("AIU"), and Royal Insurance Company ("Royal").[4] UBS seeks a declaratory judgment ordering these companies to represent UBS in this action, and to indemnify UBS for any judgment St. Paul recovers

---

1. The Rider also obligated Durst and FTSA to obtain on-site third-party liability policies covering UBS and all subcontractors; Durst and FTSA obtained such policies from Liberty Mutual (not a party to this action) and TIG Insurance Company ("TIG"). The Rider also obligated UBS to obtain off-site liability coverage; UBS obtained such coverage from AIU Insurance Company ("AIU") and Royal Insurance Company ("Royal"). These policies all contained standard clauses excluding coverage for damage covered by the Policy.

2. TIG, pursuant to its excess liability policy, paid an estimated $10 million in claims as well.

3. St. Paul voluntarily dismissed all claims against Tishman, leaving UBS as the sole remaining first-party defendant.

4. The TIG policy was obtained by Durst and FTSA, and named UBS as an additional insured. The Royal and AIU policies were obtained by UBS.

against UBS. All three companies disclaimed coverage and refused to defend UBS.

Rather than answer the third-party complaint, TIG has moved to dismiss both the underlying complaint and the third-party complaint for failure to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6). AIU and Royal answered the third-party complaint, and cross-moved to dismiss the underlying complaint and the third-party complaint on the pleadings.[5] Fed.R.Civ.P. 12(c). Defendant UBS joins in support of TIG, AIU and Royal's motions to dismiss the underlying complaint against UBS.

The question presented is whether the waiver of a right of recovery in the Rider, and accompanying waiver of subrogation clause in the Policy, bar St. Paul's action.

## II. Discussion

Federal courts sitting in diversity cases must apply the substantive law of the forum State, *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), including the choice of law rules of that state. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 497, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). It is uncontested that New York law applies to this diversity action.[6]

When applying state law, a federal court must apply the law as determined by the highest court of that state. *See Commissioner of Internal Revenue v. Bosch's Estate,* 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). If the highest state court has not ruled on the precise issue in dispute, the federal court must attempt to ascertain what the highest court would do if faced with that question, giving " 'proper regard' to relevant rulings of other courts of the State." *Bosch,* 387 U.S. at 465, 87 S.Ct. 1776; *see also In re Brooklyn Navy Yard Asbestos Litigation,* 971 F.2d 831 (2d Cir.1992).

### A. The Motions to Dismiss St. Paul's Complaint Against UBS

TIG moves to dismiss St. Paul's complaint against UBS for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Royal and AUI separately move to dismiss St. Paul's complaint against UBS on the pleadings. Fed. R.Civ.P. 12(c). These motions are functionally identical, *see* Moore's Federal Practice and Procedure § 12.38 ("any distinction between [12(b)(6) and 12(c) motions] is merely semantic because the same standard applies to motions made under either subsection"), *Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 125–6 (2d Cir.2001), and are all premised on the same argument: that the waiver of a right of recovery in the Rider, and accompanying waiver of subrogation clause in the Policy, preclude St. Paul's action against UBS.

■ In considering a motion to dismiss for failure to state a claim upon which relief can be granted, the Court merely "determine[s] whether the complaint itself is legally sufficient," *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985), accepting as true its factual allegations, *see Anatian v. Coutts Bank (Switzerland) Ltd.,*

---

**5.** In the course of briefing the present motions, plaintiff St. Paul purported to move to strike two of UBS's affirmative defenses. No notice of motion was ever filed. This purported motion to strike affirmative defenses raised no new issues, and simply presented additional arguments concerning the issues already raised in the present motions. Because the Court dismisses St. Paul's action, any purported motion to strike UBS's affirmative defenses is moot.

**6.** The underlying contract was between two New York entities, the construction site was located in New York, and all of the work was performed in New York.

193 F.3d 85, 88 (2d Cir.1999). All inferences are drawn in favor of the non-moving party. *See Moore v. PaineWebber, Inc.*, 189 F.3d 165 (2d Cir.1999). The complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir.2000) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In making this assessment, the Court "must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits and documents incorporated by reference in the complaint." *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir.1999).

*1. St. Paul's Action Against UBS Is Barred By the Waiver of a Right of Recovery in the Insurance Rider, and the Accompanying Waiver of Subrogation Clause in the Policy*

■ The moving parties argue that this action is barred by Durst and 4TSA having waived a right of recovery for losses covered by the Policy, and St. Paul having waived subrogation rights in the Policy. It is well-settled that waiver of subrogation clauses are valid in New York state. *See Board of Education v. Valden*, 46 N.Y.2d 653, 657, 416 N.Y.S.2d 202, 389 N.E.2d 798 (1979) (upheld waiver of subrogation clause in construction contract, stating that it "violate[d] neither [New York statutes] nor any other public policy"). Such clauses are particularly common in large construction projects, because they

> avoid[ ] disruption and disputes among the parties to [the] project, and ... protect[ ] the contracting parties from loss by bringing all property damage under the all risks builder's property insurance.

*Tokio Marine & Fire Ins. Co. Ltd. v. Employers Ins. of Wausau*, 786 F.2d 101, 104 (2d Cir.1986).

■ New York courts, when enforcing waivers of subrogation, look to the specific terms of the waiver as executed by the parties. *See Kaf–Kaf, Inc. v. Rodless Decorations, Inc.*, 90 N.Y.2d 654, 658, 665 N.Y.S.2d 47, 687 N.E.2d 1330 (1997).[7] The Insurance Rider contains a comprehensive waiver of the right of recovery.[8] The Rider also specifies that the Policy would contain a waiver of subrogation clause.[9] St.

---

7. St. Paul misreads *Kaf–Kaf*, and argues that it sets forth a general rule of law that for a waiver of subrogation to be valid, all parties that have waived their right of recovery must ensure that their "respective" insurance policies contain a waiver of subrogation. In *Kaf–Kaf*, the Court of Appeals merely enforced the terms of the waiver in the lease at issue in that action. The lease specified that the "waiver [of recovery rights] shall be in force only if *both releasors' insurance policies* contain" a waiver of subrogation clause. *Kaf–Kaf*, 90 N.Y.2d at 658, 665 N.Y.S.2d 47, 687 N.E.2d 1330 (emphasis added).

8. The waiver states,

> Owner, Construction Manager and Lenders and other associated parties waive all rights against each other, against each of their agents and employees, and against Archi-

tect and each of their agents and employees and against separate Contractors and their Subcontractors of all tiers, agents or employees, for damages caused by fire or other perils to the extent covered by insurance obtained pursuant to Owner's "All Risk" Builder's Risk Insurance or any other property insurance applicable to the Work ...

Insurance Rider, Royal Notice of Cross–Motion, Ex. D.

9. The Rider states, "the Builder's Risk policy shall be endorsed to ... waive the carrier's right of recovery under subrogation against Construction Manager and all Contractors and Subcontractors" insured by the policy. The Court notes that, St. Paul's arguments notwithstanding, the Rider sets forth a requirement for a waiver of subrogation only in the Policy, *not* in any additional liability policies.

Paul's policy contains such a clause.[10] These clauses demonstrate St. Paul, Durst, 4TSA and UBS's unambiguous intention to prevent actions such as this one.

The Court thus holds that this action is barred by the waiver of a right of recovery in the Rider and the waiver of subrogation in the Policy.[11]

### 2. New York Public Policy Does Not Forbid Waiver of Subrogation for Claims of Gross Negligence

█ St. Paul argues that New York law does not permit a waiver of subrogation that would bar its claims against UBS for gross negligence. The Court holds that New York law *does* permit such a waiver, despite the contrary conclusions of three other federal district courts applying New York law.

Neither the New York Court of Appeals nor any lower New York state court has decided whether a waiver of subrogation clause can bar a subrogated claim for gross negligence. St. Paul argues that public policy should require any party who commits gross negligence to bear the cost of any injury incurred as a result of that conduct. Such a rule would presumably have the benefit of deterring contractors from committing gross negligence, but it would have the detriment of encouraging litigation among parties to complicated construction contracts.

The direction New York courts are likely to take is suggested by the fact that New York law does permit a party to insure itself against liability for its own gross negligence. *See Public Service Mutual Insurance Co. v. Goldfarb*, 53 N.Y.2d 392, 400–401, 442 N.Y.S.2d 422, 425 N.E.2d 810 (1981); *Teska v. Atlantic National Insurance, Co.*, 59 Misc.2d 615, 300 N.Y.2d 375 (1969) ("[I]t is not against public policy to require the insurance company to be liable for damages as a result of reckless, wanton or willful acts of the insured"); N.Y. Jurisprudence § 1539 (2d Edition). Given that UBS's liability for gross negligence could be passed on to an insurer, there would appear to be no reason not to permit an insurer to absorb such liability by waiving a right of subrogation for such conduct.

St. Paul points out that a party is not permitted to deprive compensation to those injured by its gross negligence by the device of inserting into a contract a clause exculpating the party from liability for its own gross negligence. *See, e.g., Gross v. Sweet*, 49 N.Y.2d 102, 424 N.Y.S.2d 365, 400 N.E.2d 306 (1979); *Sommer v. Federal Signal Corp.*, 79 N.Y.2d 540, 583 N.Y.S.2d 957, 593 N.E.2d 1365 (1992). This rule, however, simply ensures that a party injured by another's gross negligence will be able to recover its losses. To an injured party, it is irrelevant whether it recovers from the grossly negligent party or from an insurer. This rule, thus, does not bear on the lawfulness of a clause affecting an *insurer's* right to recover from a party who was grossly negligent.[12]

---

10. The Policy's waiver of subrogation clause states that its insureds may "waive 'your' right against another party [to recover losses insured under the policy] in writing . . . prior to 'loss' to 'your' Covered Property." Policy, Townsend Decl., Ex. B.

11. Because the Court holds that the waiver of subrogation is valid, it does not consider the moving parties' additional argument that St. Paul's attempt to act as Durst and FTSA's subrogee against UBS would be invalid because of the rule of law that an insurer cannot act as a subrogee to recover against a party that is also insured under a policy. *See EL-RAC, Inc. v. Ward*, 96 N.Y.2d 58, 724 N.Y.S.2d 692, 748 N.E.2d 1 (2001).

12. The New York Court of Appeals has endorsed this principle in the context of ordinary negligence claims, stating that

> [a] distinction must be drawn between contractual provisions which seek to exempt a party from liability to persons *who have been injured . . .* and contractual provi-

TIG, AIU, Royal and UBS cite two out-of-state decisions that thoroughly analyze this precise issue, and conclude that waivers of subrogation can bar claims to recover payments for injuries due to gross negligence. *See Behr v. Hook*, 173 Vt. 122, 787 A.2d 499 (2001); *Agra–By–Products, Inc. v. Agway, Inc.*, 347 N.W.2d 142 (N.D. 1984).

There are three federal decisions that conflict with those cited above, and that hold that waivers of subrogation cannot bar subrogated claims for gross negligence. *See American Motorist Ins. Co. v. Morris Goldman Real Estate Corp.*, 277 F.Supp.2d 304 (S.D.N.Y.2003); *Travelers Ind. Co. v. Losco Group, Inc.*, 204 F.Supp.2d 639 (S.D.N.Y.2002); *Charter Oak Fire Ins. Co. v. Trio Realty Co.*, 2002 WL 123506 (S.D.N.Y.2002).

In the most recent decision in this District, *American Motorist*, the court refused to enforce a waiver of subrogation clause because to do so would limit or eliminate a wrongdoer's liability. *American Motorist*, 277 F.Supp.2d at 308. In so holding, the court failed to distinguish between the public policy behind insuring that a victim is paid, and a competing policy permitting parties to avoid costly litigation over whether a party was, or was not, grossly negligent, through the use of insurance (and waivers of subrogation).[13]

The Court concludes that New York courts would likely permit waiver of subro-

gation clauses to bar claims of gross negligence, for the reasons stated at pp. 340–42 *supra*. St. Paul's gross negligence claims against UBS are therefore barred by the waiver of subrogation clause of the Insurance Rider. TIG's motion to dismiss St. Paul's complaint for failure to state a claim, and Royal and AIU's motions to dismiss St. Paul's complaint on the pleadings, are therefore granted.

*B. The Motions to Dismiss UBS's Third–Party Complaint Against TIG, AIU and Royal*

TIG, in lieu of answering UBS's third-party complaint, moved to dismiss for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). AIU and Royal both answered the third-party complaint, and filed motions to dismiss it upon the pleadings. Fed.R.Civ.P. 12(c). These motions are functionally identical, *see Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 125-6 (2d Cir. 2001), and all argue that the policies TIG, AIU and Royal issued relating to the Four Times Square construction project cannot be interpreted to require them to defend UBS in this action, or to include coverage for the losses reimbursed to Durst and FTSA by St. Paul pursuant to the Policy.

Under New York law, an insurer seeking to avoid a duty to defend must demonstrate that "the exclusion is subject to no other reasonable interpretation . . ." *Fron-*

---

sions, such as those involved in this suit, which in effect simply require one of the parties to the contract to provide insurance for all the parties.
*Valden*, 46 N.Y.2d at 656–7, 416 N.Y.S.2d 202, 389 N.E.2d 798 (emphasis added).

**13.** Neither *Losco* nor *Charter Oak* (which simply follows *Losco*) offers any reasoned basis for its holding. The *Losco* court cites a New York state decision as authority for the proposition that waivers of subrogation cannot bar claims of gross negligence, *Losco*, 204 F.Supp.2d at 644, *citing Federal Ins. Co. v.*

*Honeywell, Inc.*, 243 A.D.2d 605, 663 N.Y.S.2d 247, 248 (2d Dep't 1997), but *Honeywell* in fact holds exactly the opposite. In *Honeywell*, the court observed that a waiver of subrogation clause "clearly bars the plaintiff [insurance company] from seeking return of the [payment] covered by the insurance policy," but held that the insurance company could still sue the defendant for the insurance policy *deductible* (a sum that was not covered by the policy, and that therefore was not covered by the waiver of subrogation). *Id.*

*tier Insulation Contractors v. Merchants Mut. Ins. Co.,* 91 N.Y.2d 169, 175, 667 N.Y.S.2d 982, 690 N.E.2d 866 (1997). An insurer seeking to disclaim coverage faces a heavy burden of "demonstrat[ing] that the allegations of the complaint can be interpreted only to exclude coverage." *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.,* 98 N.Y.2d 435, 749 N.Y.S.2d 456, 779 N.E.2d 167 (2002).

■ All three policies contain exclusions that can only be interpreted to exclude coverage of losses at issue in this action. The liability policies issued by TIG, AIU and Royal all excluded coverage already provided under St. Paul's builder's risk Policy for the site. TIG's policy contained a "Builder's Risk Exclusion Endorsement" that excluded coverage "for any property damage to, or other loss of use, or destruction of . . . [a]ny part of the wrap-up project(s) at the [Four Times Square] site . . . [and] any part of the buildings being constructed . . ." TIG Excess Liability Policy, Townsend Decl., Ex. A. AIU's off-site liability policy contained a standard exclusion for "Damage to . . . that particular part of real property on which you or any contractors . . . are performing operations, if the property damage arises out of those operations." AIU Policy, AIU Notice of Cross-Motion, Ex. E. Royal's excess off-site liability policy contained an identically-worded exclusion. Royal Policy, Royal Notice of Cross-Motion, Ex. A.

These third-party liability policies all contained similar exclusions because they were designed not to overlap with St. Paul's builder's risk Policy. *See Zandri Construction Co., Inc. v. Firemen's Ins. Co. of Newark, et al.,* 81 A.D.2d 106, 109, 440 N.Y.S.2d 353 (1981) (rejecting similar effort to recover from liability insurer for damage to work site); *William Crawford,*

*Inc. v. Travelers Ins. Co.,* 838 F.Supp. 157, 159 (S.D.N.Y.1993) (granting summary judgment for liability insurer in similar action, and observing that "insurance is indeed available to cover this risk under a builder's risk policy").[14]

For the foregoing reasons, the Court holds that the relevant exclusions in TIG's, AIU's and Royal's liability policies excluded coverage for the losses St. Paul paid pursuant to its Policy; TIG's, AIU's and Royal's motions to dismiss UBS's third-party complaint must therefore be granted.

## Conclusion

For the reasons stated above, the Court holds that St. Paul's action against UBS is barred by the Rider and Policy, and that UBS's third-party action against TIG's, AIU's and Royal is barred by the exclusions of TIG, AIU and Royal's liability policies. TIG's motion to dismiss St. Paul's complaint against UBS and UBS's third-party complaint against TIG for failure to state a claim [35–1] is granted. Royal's motion to dismiss St. Paul's complaint against UBS and UBS's third-party complaint against Royal on the pleadings [43–1 and 43–2] is granted. AIU's motion to dismiss St. Paul's complaint against UBS and UBS's third-party complaint against AIU [45–1] is granted.

The Clerk of Court is directed to close this case. Any pending motions are moot.

SO ORDERED.

---

**14.** AIU's and Royal's off-site liability policies also contained exclusions for "architectural" and "engineering" services, foreclosing the argument that off-site negligence in the design of the scaffolding should be covered by these policies.