Geiger v Hudson Excess Ins. Co. (2025 NY Slip Op 04609)

Geiger v Hudson Excess Ins. Co.

2025 NY Slip Op 04609

Decided on August 07, 2025

Appellate Division, First Department

Kapnick, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: August 07, 2025
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Peter H. Moulton
Saliann Scarpulla Barbara R. Kapnick Julio Rodriguez III John R. Higgitt

Index No. 655688/20|Appeal No. 4349|Case No. 2023-06445|

[*1]Brenda Geiger et al., Plaintiffs-Appellants-Respondents,
v
Hudson Excess Insurance Company, Defendant-Respondent, Lancer Indemnity Company, Defendant-Respondent-Appellant.

Plaintiffs appeal and defendant-Lancer cross-appeals from the order and judgment (one paper) of the Supreme Court, New York County (Gerald Lebovits, J.), entered on or about August 30, 2023, which, insofar as appealed from as limited by the briefs, denied plaintiffs' motion for summary judgment insofar as it sought a declaration that defendant Hudson Excess Insurance Company owed a duty to defend and indemnify in the underlying action and insofar as it sought a declaration that defendant Lancer Indemnity Company owed a duty to indemnify in the underlying action, and granted the motion insofar as it sought a declaration that Lancer owed a duty to defend; denied Lancer's cross-motion for summary judgment dismissing plaintiffs' claims with respect to the duty to defend, granted the cross-motion dismissing plaintiffs' claims with respect to the duty to indemnify; granted the cross-motion insofar as it sought dismissal of Hudson's cross-claim as against it; and granted Hudson's motion for summary
 judgment dismissing plaintiffs' claims as against it.

The Casas Law Firm, P.C., New York (John V. Golaszewski of counsel), for appellants-respondents.
Gerber, Ciano, Kelly & Brady, LLP, Buffalo (Brendan T. Fitzpatrick and Daniel W. Gerber of counsel), for respondent-appellant.
Melito & Adolfsen, P.C., New York (Steven I. Lewbel of counsel) for respondent.

Kapnick, J. 

This appeal stems from separate commercial insurance policies issued by Hudson Excess Insurance Company and Lancer Indemnity Company, each covering different periods, to nonparty Vola Corp., which operated a night club/restaurant under the name Sorry not Sorry in Forest Hills, Queens. In the underlying federal action (the Vola action), plaintiffs, all professional models and social media influencers, allege that Vola improperly and knowingly used their images and likenesses in advertising without their consent and without payment. Vola tendered the defense of the Vola action to each insurer and sought indemnity, but both companies denied Vola's request for defense and indemnification. Plaintiffs and Vola eventually entered into a settlement agreement and consent judgment in the Vola action, pursuant to which Vola assigned to plaintiffs its right to prosecute its coverage claims against Hudson and Lancer and to recover the amount of the judgment and defense costs. Plaintiffs then commenced this action against Hudson and Lancer seeking, among other things, a declaration that Hudson and Lancer had a duty to defend and indemnify Vola in the underlying federal action.
I.
We first examine plaintiffs' appeal regarding their claims against Hudson. On the issue of whether Hudson had a duty to defend and indemnify Vola in the Vola action, Supreme Court agreed with Hudson that its policy was void ab initio due to material misrepresentations made by Vola in its insurance application, thereby granting summary judgment declaring that Hudson had no duty to defend or indemnify.
For an insurer to be entitled to rescind a policy ab initio, it must show that the applicant made a material misrepresentation (see Dwyer v First Unum Life Ins. Co., 41 AD3d 115, 116 [1st Dept 2007]). "No misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such contract" (Insurance Law § 3105 [b][1]). While the materiality of a misrepresentation is ordinarily a question for the trier of fact, it becomes a matter of law for the court's determination when the evidence concerning materiality is clear and substantially uncontradicted (see Process Plants Corp. v Beneficial Natl. Life Ins. Co., 53 AD2d 214, 216-217 [1976], affd 42 NY2d 928 [1977]).
Here, the evidence proffered by Hudson was sufficient to meet its burden on a motion for summary judgment. Hudson's submissions establish that in its insurance application Vola asserted that the insured premises was a restaurant and bar with 70% of its income derived from food sales and 30% from the sale of alcoholic beverages; had restaurant operating hours of 12 p.m. to 9 p.m.; did not provide entertainment or have a stage or dance floor; did not involve hookahs or other communal smoking devices; lacked consumption promotions such as "happy hour" and "ladies night"; and did not close later than 2 a.m. On its application, Vola left the boxes for DJ, exotic/go-go dancers/adult entertainment, live bands, stage/floor show or contests unchecked.
However, the evidence submitted by Hudson establishes that, contrary to its application representations, Vola advertised Sorry Not Sorry on social media as opening "at 10PM with an open bar between 11PM and 1AM," offering "$150 bottles of alcohol until 4AM," and featuring exotic dancing, DJs, a hookah bar/lounge, and drink specials. Additionally, in Hudson's senior underwriter's affidavit, he affirmed that "[b]ut for Vola's concealments and misrepresentations, Hudson Excess would not have issued the Policies to Vola because Hudson Excess' underwriting guidelines prohibited doing so." "A fact is material so as to [void] ab initio an insurance contract if, had it been revealed, the insurer or reinsurer would either not have issued the policy or would have only at a higher premium" (Interested Underwriters at Lloyd's v H.D.I III Assoc., 213 AD2d 246, 247 [1st Dept 1995] [internal quotation marks omitted]; see also Arch Specialty Ins. Co. v Kam Cheung Constr., Inc., 104 AD3d 599, 599 [1st Dept 2013] [holding that the defendant's misrepresentation on its insurance application was material as a matter of law because "had the insurer known the true facts, it would have refused to make such contract either by not issuing the policy or by charging a higher premium" (internal citations and quotation marks omitted)]. Thus, Hudson demonstrated prima facie that Vola's insurance application contained material misrepresentations as a matter of law, thereby shifting the burden to plaintiffs to establish the existence of a triable issue of fact (see e.g. Bleecker St. Health & Beauty Aids, Inc. v Granite State Ins. Co., 38 AD3d 231, 232 [1st Dept 2007]).
Plaintiffs failed to meet their burden. To counter Hudson's evidence that Sorry Not Sorry was a nightclub/adult entertainment establishment, instead of a restaurant or restaurant and bar, plaintiffs submitted an affidavit from George Aspiotis, Vola's owner, in which he alleges that Sorry Not Sorry was precisely what Vola represented in its insurance application, i.e., a bar and restaurant that at no point in time was an "adult entertainment lounge and strip club with exotic dancers." Yet the same affidavit also stated that "Sorry Not Sorry was primarily a bar, that also served food," conflicting with Vola's insurance applications executed by Aspiotis that describe Sorry Not Sorry as primarily a restaurant with seventy percent food sales and thirty percent alcohol consumption sales. Under the circumstances, the affidavit presents a feigned attempt to create an issue of fact, insufficient to defeat a motion for summary judgment (see Dixon v Sum Realty, Co., 190 AD3d 584, 585 [1st Dept 2021]). Thus, the motion court properly granted Hudson's motion for summary judgment dismissing plaintiffs' claims as against it.
II.
We next examine the respective appeals by defendant Lancer and plaintiffs regarding Lancer's duty to defend and/or indemnify Vola. On the issue of whether Lancer had a duty to defend in the Vola action, Supreme Court agreed with plaintiffs, thereby granting them summary judgment declaring that Lancer had a duty to defend. On the issue of whether Lancer had a duty to indemnify in the Vola action, however, Supreme Court granted summary judgment to Lancer declaring that it had no duty to indemnify.
As an initial matter, we reject Lancer's procedural argument for denying plaintiffs' motion for summary judgment. Although plaintiffs did not submit all of the pleadings with their motion, the motion court providently exercised its discretion when it declined to deny plaintiffs' motion as procedurally defective. It is within a court's discretion to "overlook the procedural defect of missing pleadings when the record is sufficiently complete" (Washington Realty Owners, LLC v 260 Wash. St., LLC, 105 AD3d 675, 675 [1st Dept 2013] [internal quotation marks omitted]).
On the merits, Supreme Court properly found that Lancer had a duty to defend in the Vola action. "A duty to defend is triggered by the allegations contained in the underlying complaint" (BP A.C. Corp. v One Beacon Ins. Group, 8 NY3d 708, 714 [2007]), and "it is immaterial that the complaint against the insured asserts additional claims which fall outside the policy's general coverage or within its exclusory provisions" (Town of Massena v Healthcare Underwriters Mut. Ins. Co., 98 NY2d 435, 444 [2002] [internal quotation marks and brackets omitted]). "If any of the claims against [an] insured arguably arise from covered events, the insurer is required to defend the entire action" (id. at 443, quoting Frontier Insulation Contrs. v Merchants Mut. Ins. Co., 91 NY2d 169, 175 [1997]).
Here, Lancer argues that the policy exclusions for the "knowing violation" of the rights of another and for material published with knowledge of falsity relieve it of any duty to defend where the Vola action alleged that Vola knowingly violated the rights of plaintiffs. However, plaintiffs also alleged that their images were used negligently and, as Lancer acknowledges, Lancer's policy provided coverage for at least two of the instances alleged in the Vola action. Thus, based on these allegations, the complaint did not discharge Lancer's duty to defend, as the motion court correctly found (see Mendes & Mount v American Home Assur. Co., 97 AD2d 384, 385 [1st Dept 1983]).
However, the motion court should have denied Lancer's motion for summary judgment dismissing the duty to indemnify claim. As previously indicated, the underlying Vola action was resolved by a settlement agreement including a consent judgment, by which plaintiffs agreed to forgo execution of the judgment in consideration for Vola's assignment of its rights against its insurers to plaintiffs. Lancer argues that because the language of the settlement agreement contains a "release," it relieves its insured (Vola) of any liability, thereby extinguishing any duty Lancer had to indemnify. Plaintiffs, however, argue that the agreement not to execute the judgment in exchange for the assignment of the rights of the insured did not constitute a "release" and did not mean that Vola was not still "legally obligated" to pay the judgment, and therefore Lancer still had a duty to indemnify (see Intelligent Digital Sys., LLC v Beazley Ins. Co., Inc., 207 F Supp 3d 242, 246 [ED NY 2016]).
A release is an executed agreement that requires no further performance, effecting an outright cancellation or discharge of the entire obligation (see Wilder v Penn R.R. Co., 245 NY 36, 39 [1927]; McMahan & Co. v Bass, 250 AD2d 460, 461 [1st Dept 1998], lv dismissed and denied 92 NY2d 1013 [1998]). "[A] valid release [generally] constitutes a complete bar to an action on a claim which is the subject of the release" (Centro Empresarial Cempresa S.A. v Ame rica Mo vil, S.A.B. de C.V., 17 NY3d 269, 276 [2011] [internal quotation marks omitted]). On the other hand, a covenant not to execute a judgment is not a complete release from liability. Rather, a covenant not to execute constitutes an agreement to exercise forbearance from asserting any claim which either exists or which may accrue regardless of any potential liability (see Wilder, 245 NY at 39 [covenant not to sue found where no liability existed at the time of the parties' agreement]; see also Stone v National Bank & Trust Co., 188 AD2d 865, 867 [3d Dept 1992]; Colton v New York Hosp., 53 AD2d 588, 589 [3d Dept 1976]. Thus, "[a] covenant not to execute is distinguishable from a release, since a release eliminates or destroys liability while the covenant . . . does not relinquish a right or claim or extinguish a cause of action, but recognizes the continuation of the obligation or liability, and the party making the covenant agrees only not to assert any right or claim based upon the obligation" (76 CJS, Release § 3 [emphasis added]).
Contrary to Lancer's allegations, we do not read the settlement agreement as constituting a general release. The settlement agreement, with its assignment and covenant not to execute, was intended to be read and interpreted together with the consent judgment (see Matter of Oak Hill Capital Partners, L.P. v Cuti, 148 AD3d 504, 504 [1st Dept 2017] ["In the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction will be read and interpreted together, it being said that they are, in the eyes of the law, one instrument"]). The consent judgment, so ordered in the Vola action on January 22, 2020, incorporated the settlement agreement by reference and, therefore, these documents must be read together. Although the document is entitled "Settlement Agreement and Release," in our view, it cannot be read as a release, but rather should be considered as a covenant not to execute. Unlike a release, "[a] covenant not to [execute] is not a present abandonment or relinquishment of a right or claim . . . but is an agreement whereby an injured party promises not to assert a claim against others in exchange for some consideration; [and] unless the consideration given fully satisfies the injured party's claim, the covenant not to [execute] does not release the others from liability" (76 CJS, Release § 3).
In New York, the legal ramifications of a general release in the context of an insured/insurer relationship are clear; a general release in favor of an insured abolishes any present or future duty of indemnification on the part of the insurer (see e.g. McDonough v Dryden Mut. Ins. Co., 276 AD2d 817, 818 [3d Dept 2000]; Westervelt v Dryden Mut. Ins. Co., 252 AD2d 877, 879 [3d Dept 1998]). However, it appears that no New York precedent exists on the issue presented here: whether the insurer's liability is maintained where, in settlement, a consent judgment is entered that incorporates an assignment of the insured's rights against the insurer coupled with a covenant not to execute on the judgment.
Most jurisdictions that have considered this type of settlement arrangement have held that a plaintiff's promise not to execute on the judgment in exchange for the assignment of the rights of the insured does not extinguish either the insured's responsibility for the plaintiff's damages or the underlying tort liability (see e.g. Intelligent Digital Sys.,207 F Supp 3d at 246-247 ["The Court has identified cases in other jurisdictions that have also recognized the right of assignees, such as the Plaintiffs, to pursue coverage on behalf of insureds even when the assignment is coupled with a covenant not to execute judgment against the insureds"]; see also Justin A. Harris, Note, Judicial Approaches to Stipulated Judgments, Assignment of Rights, and Covenants Not to Execute in Insurance Litigation, 47 Drake L Rev 853, 856-857 [1999]; Chris Wood, Note, Assignments of Rights and Covenants Not to Execute in Insurance Litigation, 75 Tex L Rev 1373 [1997]). As Judge Spatt went on to say in Intelligent Digital Sys. (207 F Supp 3d at 247):
"[I]t appears that New York courts and a majority of courts in other jurisdictions have held that an insurance company remains 'legally obligated' to pay a claim under a policy even where, as here, the claim was assigned to a third party, and the third party agreed not to execute a judgment against the insured's personal assets" (id.).
In contrast, although the minority view, some courts have held that a plaintiff's promise not to execute on a consent judgment against the insured operates as a general release, and the release of the insured relieves the insurer of liability (see e.g. U.S. Fire Ins. Co. v Mikes, 576 F Supp 2d 1303 [MD Fla 2007], affd 279 Fed Appx 879 [11th Cir 2008]; Rosen v Florida Ins. Guar. Assn., 802 So 2d 291 [Fla 2001]).
We conclude that the majority view represents the sounder position — that a stipulated judgment, accompanied by a covenant not to execute and an assignment of claims can be enforced against an insurer. It is not difficult to find justification for the prevailing view when we consider that any scenario wherein an insured is assigning its claims against its insurer to a plaintiff, in exchange for a covenant not to execute, necessarily takes place when the insured has been abandoned by its insurer. In New York, an insurer that breaches its duty to defend a claim for loss that is covered under its policy will be held liable for the insured's reasonable settlement of that claim, regardless of whether the insurer consented to such settlement (see Isadore Rosen & Sons v Security Mut Ins. Co. of N.Y., 31 NY2d 342, 343, 347 [1972]; Atlantic Cement Co. v Fidelity & Cas. Co. of N.Y., 91 AD2d 412, 419-420 [1st Dept 1983], affd 63 NY2d 798 [1984]). Thus where, like here, the insurance provider is the one potentially in breach of the insurance contract, the insured is justified in taking affirmative steps to limit its own liability by assigning its claims against its insurer to the plaintiff in exchange for a covenant not to execute on the consented to judgment, as long as the insured has acted reasonably and in good faith (which is not in dispute here). McDonough,relied on by the motion court, does not warrant a different result. In McDonough, there was neither a consent judgment nor an assignment. Instead, the subject release discharged the insured from "all liability" (id., 276 AD2d at 818). In this case, plaintiffs and Vola consented to entry of a judgment, which plaintiffs agreed not to enforce in exchange for the assignment of Vola's right to seek indemnification from its insurers, thereby leaving Lancer's obligation to pay to the extent available under Vola's policy undisturbed. This case is precisely like Intelligent Digital Sys.:
"The Individual Insureds agreed to consent judgments on the Plaintiffs' claims in the underlying action, which they were legally obligated to pay. As part of those judgments, the Insureds assigned their rights to coverage under the Policy to the Plaintiffs in exchange for a covenant not to enforce the unpaid portions of those judgments against the Insureds personally. . . the term 'legally obligated to pay' [in the Policy] encompasses the consent judgments against the Individual Insureds, irrespective of the covenants not to enforce those judgments" (id., 207 F Supp 3d at 247).
In sum, since the settlement and consent judgment did not relieve Lancer from legal liability, they did not preclude a finding that Lancer had a duty to defend and indemnify, limited to those instances which occurred during the policy period (March 31, 2015 through March 31, 2016). Accordingly, Supreme Court should not have found that Lancer had no duty to indemnify. However, contrary to plaintiffs' contention, neither the settlement agreement nor the consent judgment constituted an admission of liability against the insurer, only the right to attempt to enforce the judgment against Lancer. Thus, the issue of whether Lancer has a duty to indemnify is denied at this time pending the resolution of liability (see Mendes & Mount v American Home Assur. Co., 97 AD2d 384, 385 [1st Dept 1983]).
Finally, Lancer's cross-motion to dismiss Hudson's cross-claim for contribution was properly granted, as the voiding of Hudson's insurance policy renders the cross-claim moot.
Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Gerald Lebovits, J.), entered on or about August 30, 2023, which, insofar as appealed from as limited by the briefs, denied plaintiffs' motion for summary judgment insofar as it sought a declaration that defendant Hudson Excess Insurance Company owed a duty to defend and indemnify in the underlying action and insofar as it sought a declaration that defendant Lancer Indemnity Company owed a duty to indemnify in the underlying action, and granted the motion insofar as it sought a declaration that Lancer owed a duty to defend; denied Lancer's cross-motion for summary judgment dismissing plaintiffs' claims with respect to the duty to defend, granted the cross-motion dismissing plaintiffs' claims with respect to the duty to indemnify; granted the cross-motion insofar as it sought dismissal of Hudson's cross-claim as against it; and granted Hudson's motion for summary judgment dismissing plaintiffs' claims as against it, should be modified, on the law, to deny Lancer's cross-motion insofar as it sought dismissal of plaintiffs' claims as against it with respect to the duty to indemnify, and otherwise affirmed, without costs.
Order and judgment (one paper) Supreme Court, New York County (Gerald Lebovits, J.), entered on or about August 30, 2023, modified, on the law, to deny Lancer's cross-motion insofar as it sought dismissal of plaintiffs' claims as against it with respect to the duty to indemnify, and otherwise affirmed, without costs.
Opinion by Kapnick, J. All concur.
Moulton, J.P., Scarpulla, Kapnick, Rodriguez, Higgitt, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: August 7, 2025